WALTER E. PALMER & another[1] *vs.* RENT CONTROL BOARD OF BROOKLINE & others.[2]

Norfolk.    January 11, 1979. — February 28, 1979.

Present: GRANT, ROSE, & GREANEY, JJ.

*Administrative Law*, Hearing. *Due Process of Law*, Administrative hearing. *State Administrative Procedure Act. Rent Control. Municipal Corporations*, Rent control. *Brookline.*

In a proceeding before a town's rent control board on a landlord's petition for an adjustment of rents, the board's refusal to allow the landlord to examine the board's investigator, who had submitted both a prehearing report which was introduced in evidence at the hearing and a post-hearing memorandum to the board, violated the landlord's rights under G. L. c. 30A, § 11(3). [114-118]

In a proceeding before a town's rent control board on a landlord's petition for an adjustment of rents, health department reports as to the condition of the premises and the existence of sanitary code violations were properly admitted under the provisions of G. L. c. 30A, § 11(4). [118]

A rent control board had authority under St. 1970, c. 842, § 7(*d*), to condition a rental increase on the landlord's future compliance with the State Sanitary Code. [118]

In a proceeding before a town's rent control board on a landlord's petition for an adjustment of rents, the board properly rejected the landlord's claimed legal expenses where there was a substantial

---

[1] Eleanor G. Palmer, wife of the plaintiff and coowner of the property in question.

[2] The tenants in the building were joined as defendants pursuant to G. L. c. 231A, § 8.

identity between the landlord and the law firm and the absence of actual payment. [119]

In a proceeding before a town's rent control board on a landlord's petition for an adjustment of rents, the board did not err in reducing the management charge from 9% to 6% where the landlord originally requested only a 6% charge, failed to provide evidence of any cash disbursements to justify the 9% charge, and offered only his own statement in support of its reasonableness. [119]

Under St. 1970, c. 842, § 8(*d*), a rent control board is required to follow the procedures in G. L. c. 30A, § 11(1)-(6), but the other provisions of c. 30A are not applicable to a proceeding before the board. [119]

COMPLAINT filed in the Municipal Court of Brookline on August 14, 1975.

On appeal to the Superior Court the case was heard by *Lynch*, J.

*Roger R. Lipson* for the defendants.

*Laurence F. Simcock*, for the plaintiffs, submitted a brief.

GREANEY, J. This is an appeal from a judgment of the Superior Court which affirmed a decision of the Municipal Court of Brookline which had previously affirmed a decision of the Rent Control Board of Brookline (board). The plaintiff alleges substantive and procedural errors in the conduct and results of the hearing before the board on his petition for adjustment of rents on his property. We find error in the conduct of the hearing, and as a result we vacate the judgment and order the case remanded to the board for a new hearing.

The relevant facts can be summarized as follows. The plaintiff is a lawyer and, together with his wife, is the owner of a multiple-family, seven-unit building at 38 Linden Street, Brookline. The apartments in 1975 were subject to rent control under St. 1970, c. 842 (as accepted by Brookline on September 29, 1970). On March 4, 1975, the landlord filed a petition for the adjustment of rents on all seven dwelling units, supported by various schedules and attachments indicating the claimed operating expenses for the building, including management fees and legal expenses charged by his law firm. On April 16, 1975, the

landlord and tenants were informed that a staff investigator of the board would inspect the building, that she would prepare a staff prehearing report (which would include background data, a summary of the staff audit of the landlord's operating expenses, and the results of the staff inspection report as to the condition of the premises) and that all reports would be available to all parties for inspection on or about April 25, 1975. A hearing on the petition was scheduled to take place on April 30, 1975.

At the hearing the landlord assumed the burden of going forward with the petition and persuading the board that he was entitled to an adjustment of the rents. After certain preliminary colloquies, not material here, the board received in evidence, through its investigator and over the objection of the landlord, the investigator's work sheets auditing the landlord's claimed operating expenses, the notice of hearing she had sent to the tenants and the comprehensive memorandum prepared by her in advance of the hearing. The memorandum contained, among other things, a summary of the disposition of prior rent adjustment applications made by the landlord on the same property, the rental structure and rental history of the property from 1970 through 1974, certain opinions as to the property's value, the results of an inspection conducted by the investigator of the common areas and certain dwelling units in the building with reference to compliance with requirements of the State Sanitary Code, and a comparative analysis of the net income returned from the property over a period of years. The report also contained recommendations with reference to the allowance or disallowance of certain operating expenses, including the management fees (a recommended reduction from 9% to 6%) and legal fees and expenses (a recommendation that they be disallowed). Concerned with the impact of these documents, the landlord attempted to have the board call the investigator so he could "cross-examine" her with reference to the documents received by the board. He particularly sought to cross-examine her on the

contents of the prehearing report. This request was denied. The landlord then moved to call her as his own witness. This second request was also denied over the landlord's objection.[3]

The hearing then proceeded to a conclusion with testimony concerning the status of the State Sanitary Code violations in the units and common areas (provided by the building commissioner and a health code inspector), testimony concerning the justification for certain operating expenses, in particular the 9% management fee and legal fees, both charged by the landlord's law firm (provided by the building manager), and testimony concerning the status of the condition of the units as to habitability and the availability of management services (provided by the tenants).

After the hearing concluded on June 2, 1975, the staff investigator prepared and sent a second "memo to the board" which was substantially identical to the report prepared prior to the hearing and introduced at it. The investigator at that time also prepared a summary of testimony which was included with the post-hearing memorandum. She provided the landlord, by letter dated June 4, 1975, the opportunity to review the new documents for the purpose of "clarification" of the evidence. The landlord strenuously objected to these post-hearing procedures[4] conducted without his consent while the mer-

---

[3] The landlord objected to the testimony and evidence which "will be presented by [the investigator] with her signature on it." No "ruling" was given on the objection. The landlord then asked that he be allowed to take the investigator's testimony as "relevant here." He then stated "she should be . . . subject to cross-examination like any witness including the landlord." The landlord then called the investigator as his witness and was told by the hearings officer: "[The investigator] is a staff member of the Rent Control Board and if anything in this document is subject to objection . . . you may state your objections." The landlord then asked: "Are you going to allow me to cross-examine [the investigator] who introduced these statements?" The presiding officer replied: "For the second time, the answer is no."

[4] By letter to the board dated June 6, 1975, counsel for the landlord stated that "[b]asic procedural rights of the landlord were violated at

its of the application were under consideration by the board. On June 10, 1975, the board issued its decision. The decision granted the landlord a conditional increase in the rents to a total of $15,108.00 (he had requested $20,400.00), with the rents to be decreased on September 1, 1975, to $12,197.00 if certain existing sanitary code violations should not by then have been corrected to the satisfaction of the local health department. In computing the new rents the board's decision specifically disallowed legal expenses charged by the landlord's law firm for representation at previous rent adjustment hearings, and reduced the management fee charged by the same law firm from 9% to 6%. After issuing its decision the board entered at a later date an additional decision that the sanitary code violations had not been corrected and, as a result, rescinded the rent increase in keeping with the proviso therein contained. The landlord sought review of the board's decisions in the Municipal Court of Brookline.[5] That court affirmed the board's decisions, specifically finding that the prehearing report was properly admitted consistent with the requirements of G. L. c. 30A, § 11(2) and (4) (ruling by implication that the landlord did not have the right to examine the investigator), and finding that the decisions were proper in all other respects. After further review in the Superior Court, the decision of the Municipal Court was affirmed.

1. We turn first to what we find to be a serious procedural error in the conduct of the board's hearing which requires a new hearing before the board.[6] The landlord attempted to call the staff investigator as his witness or,

the hearing," and that he objected to "[t]his entire procedure by which you present a staff memo to the [board] after the hearing and the admission of evidence is closed."

[5] General Laws c. 231A is established as the mechanism for review of rent control decisions by St. 1970, c. 842, § 10(a).

[6] As to the status of rent control in Brookline, see St. 1975, c. 851, as well as any local by-law that may be in effect.

in the alternative, to have the board call her so that he could cross-examiner her. He was denied this opportunity. Yet the investigator's prehearing report was introduced in evidence, was repeated nearly verbatim in the post-hearing memorandum submitted to the board, and was substantially incorporated into her summary which the board admits was also prepared for it by the investigator. The board's first decision replicated in large part facts and conclusions in the investigator's various reports.

As a matter of statutory interpretation and "administrative due process," *Haley's Case*, 356 Mass. 678, 683 (1970), we hold, on these facts, that the landlord had the right to call and examine the investigator whose report had been properly introduced in evidence pursuant to G. L. c. 30A, § 11(4).[7] Commentators on G. L. c. 30A, the State Administrative Procedure Act, inserted by St. 1954, c. 681, § 1, have stated that a principal aim of the act is "the goal of assuring that all agencies observe minimum requirements of fairness" and that "[f]air procedure is a necessity." Curran & Sacks, The Massachusetts Administrative Procedure Act, 37 B.U.L. Rev. 70, 97 (1957). They also have indicated that, while the Massachusetts act is not an exact restatement of the Federal Administrative Procedure Act, it does follow generally the "pattern of the Federal A.P.A.," *id.* at 76, and the Supreme Judicial Court has also found that the two acts are "comparable" and have the "broad, remedial purpose of . . . [providing] comprehensively for procedural due process in administrative proceedings." *Milligan* v. *Board of Registration in Pharmacy*, 348 Mass. 491, 500 (1965). Both acts provide for the admission in evidence of investigative reports and

_____

[7] Although a rent control board is not an "agency" for purposes of the State Administrative Procedure Act (see G. L. c. 30A, § 1[2]; *Gentile* v. *Rent Control Bd. of Somerville*, 365 Mass. 343, 349 n.6 [1974]; *Mayo* v. *Boston Rent Control Admr.*, 365 Mass. 575, 576 n.1 [1974]), the board in a rent adjustment proceeding is required by St. 1970, c. 842, § 8(*d*), to follow the procedures of § 11(1)-(6) of c. 30A.

other documentary evidence; both acts give a petitioner the right to "rebut" information contained in these documents; and both acts separately provide for the right to call, examine, and cross-examine witnesses. The Federal act considers the right to cross-examination[8] as essential where required for a full disclosure of the facts and as a right which covers the authors of investigation reports and other documentary evidence placed before the board.[9] Section 11(3) of our State Administrative Procedure Act incorporates protections similar to those accorded by its Federal counterpart. We find it instructive that in addition to the plain statutory language in our act conferring a right to examine and cross-examine, the right to cross-examination has been afforded a high premium in the Federal antecedent to our statute, and we have no difficulty in concluding that the board's denial in this case of the landlord's right to examine the investigator as to the contents of her reports amounted to a serious violation of the rights accorded to a party by G. L. c. 30A, § 11(3).[10] In seeking to exercise this right, it makes no

---

[8] Compare G. L. c. 30A, § 11(3) and (4), with 5 U.S.C. 556(d) (1976), the latter providing in relevant part that: "[a] party is entitled to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts."

[9] Consider the following comments from the House and Senate Reports accompanying the original Federal Administrative Procedure Act, discussing the right to cross-examine in an administrative hearing: "The right of cross-examination extends in a proper case, to written evidence submitted [at the hearing] as well as to cases in which oral or documentary evidence is received . . . ." H.R. Rep. No. 1980, 79th Cong., 2d Sess. 37 (1946). The Senate Report noted that "[t]o the extent that cross-examination is necessary to bring out the truth, the party should have it." S. Rep. No. 752, 79th Cong., 1st Sess. 23 (1945).

[10] The right to cross-examination in circumstances such as were present here becomes even more apparent when a dissimilarity between our statute and the Federal statute is examined. Section 554(d) of the Federal act provides a separation of functions rule which prohibits any employee or agent of the agency who is engaged in the performance of investigative functions to participate or advise in the

meaningful difference whether the landlord attempted to call the investigator as his own witness, to have the board put her on as its witness so that he could cross-examine her, or to call her to rebut the evidence contained in the report. Nor are we impressed with the board's arguments that she acted as a nonadversary witness — in a sense, a friend of the board. The findings and information contained in her reports were comprehensive and even from a casual examination appear to have strongly influenced the board's decisions. Nor are we impressed with the argument that cross-examination applies only to witnesses who are actually called to testify since the landlord was shut off in every attempt he made to have the investigator called to testify. The importance of examination of the investigator with regard to the contents of her report acquired a special significance in this case when the investigator was permitted to amplify upon the report and to prepare a "clarification" of the evidence after the hearings had been closed.

In the somewhat analogous situation of a guardian ad litem's report filed with a Probate Court, and without the benefit of such statutory language as § 11(3) provides, the Supreme Judicial Court has said that where the probate judge had apparently relied upon the guardian ad litem's report in making his decision, fundamental fairness required the right to rebut the report by calling and questioning the guardian ad litem. *Gilmore* v. *Gilmore*, 369 Mass. 598, 603-605 (1976). What was said there, is in point here: "To promote a fair fact-finding process, cross-examination of the investigator should be permitted . . . so that the credibility, bias, or prejudice of the investigator may be tested and the weight to be given to his report may be determined. This rule should prevail whether or not the parties consent to the investigation." *Gilmore, supra* at 605. See also, Davis, Administrative Law § 14.10 (1972), and cases cited.

decision, recommended decision, or agency review. Our act does not contain a similar preclusion.

Since a rent control board in a rent adjustment hearing is required to furnish an adversary or "trial type" proceeding and to follow the procedures set out in § 11(1)-(6) of the State Administrative Procedure Act applicable to adjudicatory hearings before agencies (*Sherman* v. *Rent Control Bd. of Brookline,* 367 Mass. 1, 7-8 [1975]), we find on the facts of this case that these procedures require both by their express terms (§ 3) and as a matter of administrative fairness the right to call and examine the board's investigator as to the subject matter of the reports and the documents prepared by her and admitted into the proceedings under § 11(4).

2. Since the matter will be remanded for a new hearing, we briefly treat other issues that may arise at that hearing. Our review of the record does not indicate that the hearing was conducted in a prejudicial or biased manner. The hearing officer has a right, and a duty, to maintain control of the proceedings. *Holland Furnace Co.* v. *FTC,* 295 F.2d 302, 305 (7th Cir. 1961). Davis, Administrative Law §§ 12.01 and 12.02 (1972), and cases cited. As part of the conduct of that hearing, the landlord as a party "may be required to furnish under oath any information required by the board." St. 1970, c. 842, § 5(*d*).

The health department reports as to the condition of the premises and the existence of sanitary code violations were properly admitted under the provisions of G. L. c. 30A, § 11(4). See also *Commonwealth* v. *Collins,* 257 Mass. 580, 584-585 (1926). The landlord's argument that he did not have the opportunity to contest the findings of the health department before that agency is irrelevant to the receipt of the reports in the rent adjustment hearing on the issue of the building's condition.

As to the proviso annexed to the increase, St. 1970, c. 842, § 7(d), would appear to permit the board to condition a rental increase on the property's future compliance with the State Sanitary Code. See also *Colton* v. *Berman,* 21 N.Y. 2d 322, 327-328 (1967); *Hemsley-Spear, Inc.* v. *Goodwin,* 87 Misc. 2d 331 (N.Y. Sup. Ct. 1976).

The claimed legal expenses were properly rejected by the board. As found by the board, and affirmed by the reviewing courts, there was a substantial identity, as to these expenses, between debtor (landlord) and creditor (landlord's law firm) and the absence of actual payment. These facts called into question the legitimacy of the charges. The expenses also were properly disallowed as an aspect of management and not as a separate expense of operation or maintenance. Nor were the legal expenses shown to be an "unavoidable increase . . . in operating . . . expenses," or otherwise reasonable or necessary. St. 1970, c. 842, § 7(b)(2). The management charge was properly reduced from 9% to 6% since the landlord originally requested only a 6% charge in this category (which is the amount normally allowed for landlord self-management), failed to provide any cash disbursements to justify the 9% charge, and offered only his own statement in support of its reasonableness.

Finally, the landlord's remaining procedural objections are based upon the erroneous premise that all of G. L. c. 30A applies to this type of proceeding. The error of this assumption is revealed by the specific language in St. 1970, c. 842, § 8(d), and the Supreme Judicial Court's interpretation of art. XXX of the Brookline by-laws in *Marshal House, Inc.* v. *Rent Control Bd. of Brookline,* 358 Mass. 686 (1971), contrary to the landlord's position on the point. The landlord's arguments that we should otherwise interpret art. XXX and St. 1970, c. 843, "have been carefully considered by the court but we do not feel they are of sufficient import to warrant further discussion." *Marshal House, Inc.* v. *Rent Control Bd. of Brookline, supra* at 709.

The judgment of the Superior Court is vacated, and the case is remanded to that court with directions to remand the matter to the Rent Control Board of Brookline for additional proceedings consistent with this opinion. Any increase in rents allowed after the additional proceedings is to be made retroactive to the date of the board's origi-

nal decision if the sanitary code violations have been cured. *Zussman* v. *Rent Control Bd. of Brookline*, 4 Mass. App. Ct. 135, 143 n.14 (1976), reversed on other grounds, 371 Mass. 632 (1976).

*So ordered.*