[No. B127829. Second Dist., Div. One. July 31, 2001.]

GLENDALE MEMORIAL HOSPITAL & HEALTH CENTER et al.,
Plaintiffs and Respondents, v.
STATE DEPARTMENT OF MENTAL HEALTH, Defendant and
Respondent;
COUNTY OF LOS ANGELES, Real Party in Interest and Appellant.

**COUNSEL**

Pollak, Vida & Fisher, Girard Fisher and Lawrence J. Sher for Real Party in Interest and Appellant.

Stephenson, Acquisto & Colman, Joy Young Stephenson, Tracy D. Swann and Jacobs Chang for Plaintiffs and Respondents.

Bill Lockyer, Attorney General, Pamela Smith-Steward, Chief Assistant Attorney General, Charlton L. Holland III, Assistant Attorney General, John H. Sanders and Karen L. Fried, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**MALLANO, J.**—In this case of first impression, we address administrative regulations implemented in 1995 to govern reimbursement of private hospitals that provide acute psychiatric care to Medi-Cal beneficiaries. Plaintiffs Glendale Memorial Hospital & Health Center, Long Beach Community Hospital, Northridge Hospital Medical Center, and Presbyterian Intercommunity Hospital (Hospitals) sought a writ of mandate in superior court challenging decisions made by defendant state Department of Mental Health (DMH) that Hospitals were not entitled to reimbursement for certain days of

psychiatric care provided to a number of patients. The trial court found that many of DMH's decisions were not supported by substantial evidence and entered judgment ordering DMH to reimburse Hospitals. Real party in interest County of Los Angeles (County), which under the 1995 regulations is immediately liable for the reimbursement payments, appealed.

DMH's decisions denying reimbursement were set forth in terse statements that, based on a clinical review of information submitted, DMH had decided that medical necessity for the requested charges had not been established. We conclude that these decisions fail to contain requisite "findings to bridge the analytic gap between the raw evidence" presented at the administrative level and DMH's "ultimate decision[s]," as required by *Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 515 [113 Cal.Rptr. 836, 522 P.2d 12]. Accordingly, we remand with instructions for the trial court to enter an order directing DMH to make adequate findings.

BACKGROUND

### 1. *Reimbursement Regulations*

Medi-Cal is the program by which the State of California provides medical services to its indigent population. (*Memorial Hospital-Ceres v. Belshé* (1998) 67 Cal.App.4th 233, 235 [78 Cal.Rptr.2d 824].) To facilitate the provision of indigent mental health services at the local level in a manner consistent with federal law, the Legislature has authorized the development of "mental health plans," which are required to operate within guidelines established by DMH. (Welf. & Inst. Code, § 14680, added by Stats. 1994, ch. 633, § 2, p. 3078.) DMH's guidelines for psychiatric inpatient hospital services appear in title 9 of the California Code of Regulations at section 1700 et seq.

Under the guidelines, a mental health plan (MHP) is an entity that contracts with DMH to provide psychiatric inpatient hospital services. (Cal. Code Regs., tit. 9, § 1713; unless otherwise specified, further section references are to tit. 9 of the Cal. Code Regs.) Counties have the right of first refusal to serve as an MHP. (Welf. & Inst. Code, § 14685.) In Los Angeles, County is the MHP. Various hospitals have obtained certification from DMH to provide psychiatric inpatient hospital services. (Cal. Code regs., tit. 9, § 1718.) The hospitals are required to provide emergency care for Medi-Cal patients, regardless of the amount of payment they ultimately receive. (See *Orthopaedic Hosp. v. Belshé* (9th Cir. 1997) 103 F.3d 1491, 1498.) The hospitals request reimbursement for services they have provided by submitting treatment authorization requests (TAR's) to County. (See Cal. Code

Regs., tit. 9, § 1777.) In its capacity as an MHP, County receives a fixed amount of funding from DMH. If County spends more than the funded amount in making payment on the TAR's, County alone must bear the additional cost.

The criteria for reimbursement of psychiatric hospital admissions and continued services are set forth in section 1774, subdivisions (a) and (b), respectively.[1] In summary, section 1774 provides that for a patient's admission to be reimbursable, it must meet the following tests: The patient must

---

[1]Section 1774 provides as follows:

"(a) For Medi-Cal reimbursement for an admission to a acute psychiatric inpatient hospital, the beneficiary shall meet medical necessity criteria set forth in (1) and (2) below:

"(1) One of the following diagnoses in the Diagnostic and Statistical Manual, Fourth Edition, published by the American Psychiatric Association:

"(A) Pervasive Developmental Disorders

"(B) Disruptive Behavior and Attention Deficit Disorders

"(C) Feeding and Eating Disorders of Infancy or Early Childhood

"(D) Tic Disorders

"(E) Elimination Disorders

"(F) Other Disorders of Infancy, Childhood, or Adolescence

"(G) Cognitive Disorders (only Dementias with Delusions, or Depressed Mood)

"(H) Substance Induced Disorders, only with Psychotic, Mood, or Anxiety Disorder

"(I) Schizophrenia and Other Psychotic Disorders

"(J) Mood Disorders

"(K) Anxiety Disorders

"(L) Somatoform Disorders

"(M) Dissociative Disorders

"(N) Eating Disorders

"(O) Intermittent Explosive Disorder

"(P) Pyromania

"(Q) Adjustment Disorders

"(R) Personality Disorders

"(2) A beneficiary must have both (A) and (B):

"(A) Cannot be safely treated at another level of care; and

"(B) Requires psychiatric inpatient hospital services, as the result of a mental disorder, due to the indications in either 1 or 2 below:

"1. Has symptoms or behaviors due to a mental disorder that (one of the following):

"a. Represents a current danger to self or others, or significant property destruction.

"b. Prevents the beneficiary from providing for, or utilizing, food, clothing or shelter.

"c. Presents a severe risk to the beneficiary's physical health.

"d. Represents a recent, significant deterioration in ability to function.

"2. Requires admission for one of the following:

"a. Further psychiatric evaluation.

"b. Medication treatment.

"c. Other treatment that can reasonably be provided only if the patient is hospitalized.

"(b) Continued stay services in a psychiatric inpatient hospital shall only be reimbursed when a beneficiary experiences one of the following:

"(1) Continued presence of indications which meet the medical necessity criteria as specified in (a).

have a covered psychiatric diagnosis (§ 1774, subd. (a)(1)); the patient's condition must not be safely treatable at a lower level of care (§ 1774, subd. (a)(2)(A)); and the patient must need psychiatric inpatient services based on either specified symptoms or behaviors due to a mental disorder (§ 1774, subd. (a)(2)(B)1), or need the inpatient services for further psychiatric evaluation (§ 1774, subd. (a)(2)(B)2.a), medication treatment (§ 1774, subd. (a)(2)(B)2.b), or other treatment that can be provided only if the patient is hospitalized (§ 1774, subd. (a)(2)(B)2.c). For continued stay services following admission, the patient must exhibit the continued presence of indications or new indications of a covered diagnosis specified in section 1774, subdivision (a) (§ 1774, subd. (b)(1), (3)), serious adverse reactions to medications or procedures (§ 1774, subd. (b)(2)), or the need for continued medical evaluation and treatment that can be provided only in a psychiatric inpatient hospital (§ 1774, subd. (b)(4)).

If a TAR seeking reimbursement under section 1774 is reduced or denied by an MHP, the hospital may appeal pursuant to procedure set forth in section 1798.[2] A first level appeal goes to the MHP, which has 60 days to inform the hospital of the "decision and its basis." (§ 1798, subd. (b).) If the MHP does not respond or denies the appeal, the hospital may take a second

"(2) Serious adverse reaction to medications, procedures or therapies requiring continued hospitalization.

"(3) Presence of new indications which meet medical necessity criteria specified in (a).

"(4) Need for continued medical evaluation or treatment that can only be provided if the beneficiary remains in a psychiatric inpatient hospital."

[2] Section 1798 provides as follows:

"(a) A provider may appeal a denied, terminated or reduced request for MHP payment authorization of psychiatric inpatient hospital services which is based on this chapter to the beneficiary's MHP. Any additional MHP contractual requirements which are beyond the requirements of this chapter cannot be appealed to the Department. The written appeal shall be submitted to the MHP within ninety (90) calendar days of the date of receipt date of notification of the non-approval of payment.

"(b) The MHP shall have sixty (60) calendar days from its receipt of the appeal to inform the provider in writing of the decision and its basis.

"(1) If no basis is found for altering the decision the provider shall be notified of its right to submit an appeal to the Department when applicable.

"(2) If the MHP grants the request, the MHP shall have fourteen (14) calendar days from the date of receipt of the provider's revised request for MHP payment authorization to approve the document.

"(3) If an MHP does not respond within sixty (60) calendar days, the appeal is denied and the provider retains the right to appeal directly to the Department.

"(c) If a provider chooses to appeal to the Department an MHP's denial of MHP payment authorization, the appeal shall be submitted in writing, along with supporting documentation, within thirty (30) calendar days from the date of the MHP's written decision of denial. The provider may appeal to the Department within thirty (30) calendar days after sixty (60) calendar days from submission to the MHP, if the MHP fails to respond. Supporting documentation shall include, but not be limited to:

level appeal to DMH. DMH may allow the hospital and the MHP to present oral argument (§ 1798, subd. (f)(1)), and has 60 days from receipt of the hospital's supporting documentation to notify the hospital of the "decision and its basis." (§ 1798, subd. (f).)

## 2. *Administrative and Trial Court Proceedings*

In July and October 1997, Hospitals filed three separate petitions for writ of mandate pursuant to Code of Civil Procedure section 1094.5, challenging DMH's reduction or denial of TAR's. In December, the cases were deemed related under local rules. In April 1998, County filed a response in which it observed that the combined administrative record was over 3,900 pages and involved 35 patients and 348 contested days of inpatient hospital or administrative day services. ("Administrative day services" (§ 1701) are provided to a patient who no longer needs psychiatric inpatient services but cannot be placed in a nonacute facility because none is available.) County also noted that its own administrative decisions as the MHP and the decisions of DMH were lacking in detail. It therefore requested to supplement the record with expert declarations that would explain the decisions. Hospitals also submitted briefing on the merits. DMH filed a "notice of position" in which it stated that it had acted as a neutral arbiter in determining the second level appeals and believed that its decisions were just and correct.

At a hearing on August 6, 1998, the petitions were consolidated upon stipulation of the parties. The trial court noted that the parties had not specified what common issues of law and fact existed with respect to the

"(1) Any documentation supporting allegations of timeliness, if at issue, including fax records, phone records or memos.

"(2) Clinical records supporting the existence of medical necessity if at issue.

"(3) A summary of reasons why the MHP should have approved the MHP payment authorization.

"(4) A contact person(s) name, address and phone number.

"(d) The Department shall notify the MHP and the provider of its receipt of a request for appeal within seven (7) calendar days, along with a request for specific documentation supporting the denial of the MHP payment authorization.

"(e) The MHP shall submit the required documentation within twenty-one (21) calendar days or the Department shall find in favor of the provider.

"(f) The Department shall have sixty (60) calendar days from the receipt of the MHP's documentation to notify, in writing, the provider and the MHP of its decision and its basis.

"(1) The Department may allow both a provider representative(s) and the MHP representative(s) an opportunity to present oral argument to the department.

"(2) If the Department upholds a provider's appeal, the MHP has fourteen (14) calendar days from the receipt of the provider's revised request for payment to approve the MHP payment authorization document or submit documentation to the Medi-Cal fiscal intermediary required to process the MHP payment authorization."

TAR's being challenged and that the parties referred to the patients in different order in their briefing. The court continued the hearing, ordering that the parties jointly prepare notebooks summarizing their contentions and citing supporting documentation as to each patient involved. The court did not rule on County's request to submit supplemental declarations.

The continued hearing was held on September 10, 1998. The administrative record presented to the trial court did not include the TAR's or documentation of County's initial rejection of the TAR's. What the record most often included was, for each patient involved, a copy of the patient's medical records; a letter constituting the hospital's first level appeal to County asking for reconsideration of County's denial of the TAR; a form letter from County's mental health department, signed by the medical director for managed care, containing boxes checked specifying why the first level appeal had been denied (and occasionally a comment next to a box designated "other"); a letter from the hospital to DMH, appealing all or part of County's denial of the first level appeal (including denials based on County's failure to respond) and specifying reasons for the appeal; what appears to be a worksheet prepared by DMH on its review of the second level appeal; and DMH's administrative decision, which typically denied the hospital's appeal in boilerplate language that, "[b]ased on a clinical team review of the information submitted by you and MHP," DMH has "concluded that you failed to substantiate that this patient met the medical necessity requirements found in Section 1774. . . ."

The administrative record of patient R.D., which was one of the first presented to the trial court, is representative of the records involved in this proceeding. R.D. was described as a 78-year-old man with lung cancer and a history of psychiatric hospitalizations. He arrived at Glendale Memorial Hospital on December 14, 1995, stating that he did not want to live anymore. He was an inpatient from December 14 through December 29, 1995, a total of 15 days. (For reimbursement purposes, the first day of hospitalization is counted, the last day is not.) County denied Glendale Memorial's TAR for December 22 through December 28. Glendale Memorial appealed the denial of three of the days, December 22, 26, and 27, on the ground that the medical records of R.D.'s hospitalization on those dates demonstrated that R.D. was a danger to himself in light of his continued suicidal ideation and needed medication adjustments. The first level appeal was denied by County, with a box on a form letter checked stating that "Medical Necessity Criteria has not been documented" because "Danger to self was not established."

In its second level appeal to DMH, Glendale Memorial stated that R.D. was admitted for recurrent major depression and suicidal ideation and was

placed on medication. Glendale Memorial relied on, among other things, medical chart entries that on December 22, 1995, R.D. continued to be severely depressed and refused to attend a group session, on December 26, R.D.'s depression persisted and his medication was adjusted, and on December 27, R.D. reported feeling anxious and was sad about not visiting relatives over the holidays. The DMH worksheet contains summaries of "Psychiatrist," "Psychology," "Group Therapy," and "Nurses" notes, as well as a summary of the case and notes on "Medical Review." Highlighted in the notes are summaries of entries that on December 22 R.D. had "vague ideas of death," that he had "vague thoughts of death" on December 26, and that his "suicidal thoughts [were] lessening" on December 27. The medical review portion of the worksheet contains the notation that there is insufficient documentation to justify acute care for the days pertaining to the appeal. DMH denied the second level appeal in a letter containing the stock language, quoted above, that Glendale Memorial had failed to substantiate medical necessity requirements for patient R.D.

Glendale Memorial's petition for writ of mandate challenged the denial of TAR's involving R.D. (In its petition, Glendale Memorial abandoned its claim with respect to services provided to R.D. on December 27, 1995.) In its response, County asserted that on December 22, R.D.'s "[s]evere depression cited by [Glendale Memorial's] attorney and physician do not meet acute days medical necessity criteria. Thus, documentary evidence is not provided that patient is a danger to himself or unmanageable at a lower level of care, as required." With respect to December 26, County argued that "[n]ursing note [citation] states patient has suicidal ideation but evidences neither plan nor intent. Physician note [citation] . . . states patient has 'vague thoughts of death' but not suicidal ideation. Danger to self is not established. Patient's behavior is manageable at a lower level of care." Glendale Memorial countered that DMH "fails to appreciate that the patient was admitted with Major Depression and Suicidal Ideation with a plan to kill himself. [Citation.] Because the patient's admitting symptoms had not diminished, the patient remained at potential risk of harm to himself. [Citation.] Accordingly, the patient required adjustments in medication to stabilize his condition which meets the criteria set forth in Title 9, [California Code of Regulations] § 1774. [Citation.] Therefore, continued acute care was medically necessary. [Citation.]"

At oral argument at the continued hearing on the consolidated petitions, County referred to its earlier request to submit expert declarations. The request was denied from the bench.

The trial court ruled on Hospitals' petitions by minute order dated September 10, 1998. As to 15 of the patient claims involved (including two

separate claims for R.D.), the court stated that the patients had been "properly admitted by [Hospitals] because they were suicidal, had threatened others, or had been found wandering around unable to care for themselves. They were severely psychotic and many of them had been brought to [Hospitals] precisely because they could not safely be kept in a setting with a lower level of care. Many of them had been repeatedly hospitalized in the past for the same mental disorder. [Hospitals] kept these patients while various medications were tried and the dosages were regulated to provide effective treatment. In each case [DMH] decided that at some point during the patient's stay he or she could have been managed [at] some lower level of care, the nature and availability of which [DMH] does not specify. There is no substantial evidence in the administrative record to support those findings, which appear to be entirely . . . arbitrary and speculative."

The trial court also granted Hospitals' reimbursement requests with respect to three patients that County did not oppose. It further granted relief as to two additional patients notwithstanding County's contention that Hospitals' reimbursement requests were untimely. Reimbursement for less than all days claimed by Hospitals was ordered as to three other patients, and reimbursement was denied entirely as to five patients. Full reimbursement was ordered for the remaining patients. In all, the court overturned the denial of TAR's as to approximately 225 days of inpatient hospital care and one day of administrative services.

Judgment was filed on October 2, 1998. County filed a motion for reconsideration, arguing that under *Topanga Assn. for a Scenic Community v. County of Los Angeles, supra,* 11 Cal.3d 506, the matter should be remanded for further findings. The motion was apparently deemed moot after County filed its notice of appeal. The notice stated that the appeal was being taken "from the portions of the judgment" granting relief with respect to services provided on specified days to the 15 patients covered in the portion of the minute order quoted above, and an additional three patients, for a total of 208 inpatient hospital days (one for initial hospitalization and the remainder for continued stay services) and one administrative services day.

### STANDARD OF REVIEW

Under Code of Civil Procedure section 1094.5, subdivision (b), the superior court's inquiry in this case "extend[ed] to the questions whether [DMH] has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if [DMH] has not proceeded in the manner

required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." Where, as here, the administrative decision being reviewed does not involve a fundamental vested right, the inquiry is limited to a determination of whether the decision is supported by substantial evidence in light of the record as a whole. (*Strumsky v. San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 32 [112 Cal.Rptr. 805, 520 P.2d 29]; cf. *Bixby v. Pierno* (1971) 4 Cal.3d 130 [93 Cal.Rptr. 234, 481 P.2d 242] [when administrative decision substantially affects fundamental vested rights, trial court exercises independent judgment upon the evidence in a limited trial de novo].) "The scope of our review of the [DMH's actions] in this case is identical with that of the superior court. The same substantial evidence standard applies, and the issue is whether the findings of the [DMH] were based on substantial evidence in light of the entire administrative record. [Citations.]" (*Desmond v. County of Contra Costa* (1993) 21 Cal.App.4th 330, 334-335 [25 Cal.Rptr.2d 842].)

## DISCUSSION

County contends that the decisions of DMH on the second level appeal should be upheld because they reflect a proper interpretation of DMH regulations for payment of TAR's and are therefore supported by substantial evidence. In making this contention, County faults the trial court for ruling on the majority of the patients as a group, and proceeds to discuss five of those patients (including R.D.) in greater detail. County argues in the alternative that the matter should be remanded and DMH ordered to make findings that are sufficiently specific to permit meaningful judicial review. DMH, which has filed a three-page respondent's brief, contends that its findings were adequate. DMH further argues that if we do not agree that its findings were adequate, it is County, not DMH, which should make any further findings that may be required. Hospitals contend that DMH's decisions were not supported by substantial evidence. In making this argument, Hospitals do not discuss any of the patients individually. Rather, they assert, in essence, that the trial court's ruling reflected the proper interpretation of the DMH guidelines.

█ We find merit in County's alternate position and conclude that the absence of specific findings prevents us from fulfilling our duty under Code of Civil Procedure section 1094.5 to conduct a meaningful judicial review of the challenged administrative decisions. We further determine that DMH, not County, is the agency required to make the specific findings.

█ In *Topanga Assn. for a Scenic Community v. County of Los Angeles, supra,* 11 Cal.3d at page 515, the Supreme Court held that "implicit in [Code

of Civil Procedure] section 1094.5 is a requirement that the agency which renders the challenged decision must set forth findings to bridge the analytic gap between the raw evidence and ultimate decision or order." The court explained that "[a]mong other functions, a findings requirement serves to conduce the administrative body to draw legally relevant sub-conclusions supportive of its ultimate decision; the intended effect is to facilitate orderly analysis and minimize the likelihood that the agency will randomly leap from evidence to conclusions. [Citations.] In addition, findings enable the reviewing court to trace and examine the agency's mode of analysis. [Citations.] [¶] Absent such roadsigns, a reviewing court would be forced into unguided and resource-consuming explorations; it would have to grope through the record to determine whether some combination of credible evidentiary items which supported some line of factual and legal conclusions supported the ultimate order or decision of the agency. Moreover, properly constituted findings enable the parties to the agency proceeding to determine whether and on what basis they should seek review. [Citations.] They also serve a public relations function by helping to persuade the parties that administrative decision-making is careful, reasoned, and equitable." (11 Cal.3d at pp. 516-517, fns. omitted.)

When the administrative agency's findings are not adequate, an appropriate remedy is to remand the matter so that proper findings can be made. (See, e.g., *Saleeby v. State Bar* (1985) 39 Cal.3d 547, 566-567, 575 [216 Cal.Rptr. 367, 702 P.2d 525]; *Eureka Teachers Assn. v. Board of Education* (1988) 199 Cal.App.3d 353, 367-369 [244 Cal.Rptr. 240]; see also *McMillan v. American Gen. Fin. Corp.* (1976) 60 Cal.App.3d 175, 183 [131 Cal.Rptr. 462] [adequacy of administrative findings considered on appeal even though not raised in proceedings below].)

 This case cries out for findings that contain far greater detail than DMH's boilerplate rejections of Hospitals' appeals for failure to "substantiate that [a] patient met the medical necessity requirements found in Section 1774. . . ." For example, we can glean from the administrative record on patient R.D. that County and DMH differ in their assessment of the type of suicidality that is required to demonstrate danger to self under section 1774, subdivision (a)(2)(B)(1). What the record and counsel fail to address is that no standard has been provided for resolving this difference that would create a benchmark by which Hospitals could make informed decisions about what services they may reasonably expect to be covered by the MHP, and by which we could conduct meaningful judicial review.

We appreciate the trial court's attempt in a commonsense manner to conduct a sufficiency-of-the-evidence review of each of the patient-days

with the information presented to it. Yet we think that the law requires us to be better informed of the bases of the many administrative decisions under review in order to determine whether they were supported by substantial evidence. Our "grop[ing] through the record" is not suitable. (*Topanga Assn. for a Scenic Community v. County of Los Angeles, supra,* 11 Cal.3d at p. 516.)

The parties' appellate briefs also fail to help us evaluate the administrative record. In its opening brief and without citation to the record, County asserts that "thoughts of suicide, by themselves, do not demonstrate that a patient is suicidal or a danger to himself. A patient is not 'suicidal' unless he poses an imminent danger to himself; such imminent danger is not present unless the patient has recently threatened or attempted to take his own life and continues to present an imminent danger to himself. See e.g., Welfare and Institutions Code §§ 5260, 5264. Even if the patient thinks of death or suicide many times a day for many days in a row, a medical doctor will not consider the patient truly suicidal unless the patient has both a concrete plan about how he will kill himself and the available means to accomplish his suicidal plan. Thus, a patient who has thoughts of killing himself for several days is not an imminent danger to himself if he has no suicidal plan. Further, if a patient with suicidal thoughts can be adequately treated at a lower level of care, the provider hospital may not recover reimbursement for acute psychiatric inpatient services under $1774." (Underscoring in original.)

But nothing in law or the administrative record tells us when a doctor will consider a patient "truly suicidal." Welfare and Institutions Code sections 5260 and 5264, which are the only authorities cited by County, do not resolve the question. These statutes, which are part of the Lanterman-Petris-Short Act (LPS), provide for the continued involuntary confinement of persons whom professional staff at a designated facility have found to present an "imminent" threat of suicide. Imminence of a suicidal threat, however, is a concept on which reasonable minds could differ. Indeed, it is this difference that is at the core of much of the controversy in this case. County has not argued that some definition of imminence which may have been developed under LPS must be applied here, or even attempted to show what that definition might be.

Similarly, Hospitals' brief, without citation to the record, asserts that in denying TAR's, County and DMH "appear reluctant to accept or consider the overall condition of these mentally ill patients on each day, choosing instead to focus on mere isolated moments in a single day as a means to deny several days of service Hospitals rendered to these patients. However, this ignores the fact the behavior and conduct of a severely mentally ill patient is

unpredictable, erratic, inconsistent, deceptive, and varies throughout the day. . . . [¶] Further, [County] and DMH complain that as soon as a mentally ill patient is transferred from a 'locked' psychiatric unit to an 'open' psychiatric unit that said patient no longer requires acute care. As evidenced by the administrative record, the contrary is true. In fact, it is standard medical practice to observe a patient transferred from the locked psychiatric unit in the open psychiatric unit for at least 24 hours regarding their ability to function prior to discharge."

But nothing in the administrative record informs us of the type of variation in a patient's behavior on a given day that will establish, rather than disprove, medical necessity for acute care. Nor have Hospitals cited authority to establish what constitutes "standard medical practice" for discharging a patient from a psychiatric facility.

The instant record offers little to no guidance on evaluating administrative decisions that are based on such critical medical issues as how much weight to give a psychiatrist's notes vis-à-vis a nurse's notes or group therapy notes; the importance of a patient's condition on the day(s) preceding or following day(s) for which reimbursement is contested; and the nature of the "lower level of care" to which a patient will be relegated if acute care is denied. As it now stands, we face the daunting task of attempting to pick through a lengthy record replete with raw medical information in an effort to distinguish meaningfully between a patient's mental condition on different days of hospitalization. Without further, specific findings, we have no basis upon which to make those distinctions. We therefore conclude that such findings must be provided.

Finally, we agree with DMH that it would be helpful if County would explain the basis of its denials of Hospitals' TAR's (either initially or on the first level appeals). Indeed, County's unsuccessful request to supplement the administrative record in the trial court with expert declarations appears to be a recognition of this deficiency. Nonetheless, we find no legal basis for requiring County, rather than DMH, to make the findings required under *Topanga Assn. for a Scenic Community v. County of Los Angeles, supra,* 11 Cal.3d at page 515. Accordingly, we reject DMH's position that DMH should be excused from doing so.

DISPOSITION

The judgment is reversed, insofar as appealed from, and the cases are remanded to the trial court with instructions to enter an order directing the State Department of Mental Health to make new decisions containing

specific supportive findings regarding the claims that are identified in the notice of appeal filed by the County of Los Angeles on November 13, 1998. The parties are to bear their own costs on appeal.

Spencer, P. J., and Ortega, J., concurred.