[No. B196426. Second Dist., Div. Six. Oct. 15, 2008.]

MANUFACTURED HOME COMMUNITIES, INC., et al., Plaintiffs and Appellants, v.
COUNTY OF SAN LUIS OBISPO et al., Defendants and Respondents.

706

COUNSEL

Robie & Matthai, Edith R. Matthai and Steven S. Fleischman for Plaintiffs and Appellants.

Hart, King & Coldren, Robert S. Coldren, C. William Dahlin and Rhonda H. Mehlman for Western Manufactured Housing Association as Amicus Curiae on behalf of Plaintiffs and Appellants.

R. Wyatt Cash, County Counsel, Timothy McNulty, Deputy County Counsel; Endeman, Lincoln, Turek & Heater, Henry E. Heater and Linda B. Reich for Defendants and Respondents.

---

OPINION

**GILBERT, P. J.**—The Constitution protects everyone, the poor, the wealthy, the weak, the powerful, the guilty and the innocent. This court has held its guarantees extend to lawyers (*Cunningham v. Superior Court* (1986) 177 Cal.App.3d. 336 [222 Cal.Rptr. 854]); dogs (more precisely their owners) (*Phillips v. San Luis Obispo County Dept. etc. Regulation* (1986) 183 Cal.App.3d 372 [228 Cal.Rptr. 101]); and even politicians (*Beilenson v. Superior Court* (1996) 44 Cal.App.4th 944 [52 Cal.Rptr.2d 357]). Here we add to our list—mobilehome park owners.

Plaintiffs Manufactured Home Communities, Inc., and MHC Operating Limited Partnership (MHC) appeal a judgment denying their petition for writ of administrative mandamus against defendants County of San Luis Obispo (County), the County Board of Supervisors (Supervisors), and the County of San Luis Obispo Mobilehome Rent Review Board (Board). MHC claims that the Board's decision improperly prevented it from increasing the rent of its mobilehome park tenants.

 We conclude, among other things, the proceeding violated standards of due process because the Board's findings rested on testimony of tenants who were not subject to cross-examination. We also conclude that the tenant leases are facially valid. We reverse and remand so that the Board may decide, among other things, whether equitable estoppel applies.

### FACTS

MHC owns a mobilehome park. It served nine tenants with a notice to increase their rents. The tenants petitioned the Board, claiming that the increases violated the County's mobilehome rent control ordinance. The

ordinance exempts from rent control tenancies covered by leases or contracts that provide for more than a month-to-month tenancy. (San Luis Obispo County Code, § 25.03.010(e).)

The tenants signed a lease agreement that provides that (1) the "term of th[e] Agreement shall be for a period of twelve months," (2) the "Resident shall pay rent in the amount of $___ per month on the first day of each month," and (3) the "Park may increase rents at any time upon 90 days' notice and as allowed by state and local laws." (Agreement, pars. 7–9.)

At the Board hearing, MHC claimed it was exempt from rent control. Several tenants testified. Richard Danisi said MHC's manager told him "the rent was covered under a county rent control ordinance and . . . would be adjusted yearly . . . ." He believed he was protected from a rent increase. Danisi said MHC engaged in "a fraudulent misrepresentation" and "mob-like corporate bullying tactics."

MHC's attorney asked to cross-examine Danisi. The tenants' counsel objected. He said, "My witnesses are not prepared for cross-examination of any type . . . . [T]here is absolutely no entitlement in this ordinance to such cross-examination." The Board ruled that the tenants could not be cross-examined. Boardmember Dick Frank said, "[W]e always allow the people to speak without fear of cross-examination, because it is a fearful thing."

Ann Meyer testified she was "shell-shocked" when she received the rent increase. MHC's manager told her the lease was subject to rent control. He said she could expect a Consumer Price Index (CPI) increase of $8 a month when the lease expired.

Jim Johnson said MHC discussed no options other than a 12-month lease. They told him the rent would be increased for only two reasons: (1) a 10 percent increase if they re-rented the mobilehome, or (2) an increase of 60 percent of the CPI on "the anniversary of the rental contract."

Bill Spurrier, a 77-year-old retired tenant on a fixed income, said the prior park owner told him that because his 10-year lease expired, "we would be covered under county rent control . . . ." MHC made the same representation and engaged in a "deception." It "never disclosed to us that they were going to raise the rents above what was agreed upon . . . ."

Margaret Meyer said that the MHC manager told her she had to sign a 12-month lease or remain a month-to-month tenant. He said a month-to-month tenancy "would still be covered by rent control." She believed this

meant a 12-month lease was better and the manager agreed. When she received her rent increase notice, the manager was surprised "because he had not . . . anticipated this."

Wilma Hembee, a visually impaired tenant, said MHC gave her the signature page of the lease to sign. She never received the other portions and she believed rent control applied.

The Board found that the tenants "and the former park owner began a practice of entering into successive annual agreements each styled as a 'Standard 12 Month Rental Agreement.' " It said, "Although such an agreement might exempt a tenancy from . . . rent [control,] the prior park owner and the tenants . . . treated the tenancies as if they were subject to" the ordinance. It found MHC continued this practice, did not explain the leases, misrepresented the terms; the tenants rescinded the leases which became month-to-month tenancies subject to rent control; and the proposed rent increases were invalid.

MHC appealed to the Supervisors claiming, among other things, that "there was no opportunity to cross-examine any of the witnesses." The Supervisors adopted the Board's decision.

MHC filed a petition for writ of administrative mandamus alleging, among other things, that they were denied a fair trial because the Board "refused to allow MHC to cross-examine any of the witnesses against it." The court denied MHC's petition. It found the 12-month leases did not comply with Civil Code section 798.15, subdivision (a), were fatally uncertain, illusory, invalid, and not exempt from rent control. It rejected MHC's constitutional challenges to the rent control ordinance.

## DISCUSSION

### I

### *Relying on Testimony of Witnesses Not Subject to Cross-examination*

The parties raise numerous contentions. But the overriding issue involves the Board's authority to render a constitutionally adequate decision. MHC contends the Board erred (1) by permitting the tenants to testify without being subject to cross-examination, and (2) by making findings against it based on that testimony. It claims this made the administrative process fundamentally unfair. We agree.

■ Where the fairness of an administrative hearing is challenged, we independently review the proceedings to decide whether a party's rights were compromised. (*Sinaiko v. Superior Court* (2004) 122 Cal.App.4th 1133, 1140 [19 Cal.Rptr.3d 371].) " 'The right to cross-examine witnesses in quasi-judicial administrative proceedings is considered as fundamental an element of due process as it is in court trials.' [Citations.]" (*McLeod v. Board of Pension Commissioners* (1970) 14 Cal.App.3d 23, 28 [94 Cal.Rptr. 58].)

■ The County claims the Board properly ruled that MHC had no right to cross-examine the tenants in a rent control proceeding. It relies on our decision in *Stardust Mobile Estates, LLC v. City of San Buenaventura* (2007) 147 Cal.App.4th 1170 [55 Cal.Rptr.3d 218]. But *Stardust* distinguishes between cases where cross-examination was essential and those where it was not. "*Unlike cases that turn upon the testimony of live witnesses*, cases involving documentary evidence do not carry a critical need to inquire into credibility via cross-examination." (*Id.* at p. 1189, italics added.)

But in "almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." (*Goldberg v. Kelly* (1970) 397 U.S. 254, 269 [25 L.Ed.2d 287, 90 S.Ct. 1011].) The right to cross-examine applies in a wide variety of administrative proceedings. (*Giuffre v. Sparks* (1999) 76 Cal.App.4th 1322, 1330 [91 Cal.Rptr.2d 171] [disciplinary hearings]; *Davis v. Mansfield Metropolitan Housing Authority* (6th Cir. 1984) 751 F.2d 180, 185 [housing authority]; *Welfare Rights Organization v. Crisan* (1983) 33 Cal.3d 766, 769 [190 Cal.Rptr. 919, 661 P.2d 1073] [welfare]; *Pence v. Industrial Acc. Com.* (1965) 63 Cal.2d 48, 50–51 [45 Cal.Rptr. 12, 403 P.2d 140] [industrial accident]; *Desert Turf Club v. Board of Supervisors* (1956) 141 Cal.App.2d 446, 455 [296 P.2d 882] [use permit].) It is especially important where findings against a party are based on an adverse witness's testimony. (*Fremont Indemnity Co. v. Workers' Comp. Appeals Bd.* (1984) 153 Cal.App.3d 965, 971 [200 Cal.Rptr. 762]; *Palmer v. Rent Control Board of Brookline* (1979) 7 Mass.App.Ct. 110 [386 N.E.2d 1047, 1050] [rent control board erred by not allowing landlord to cross-examine investigator who provided report to the board].)

Here cross-examination was essential. The Board made several findings against MHC based on the tenants' testimony. It found that (1) the tenants treated the tenancies as if they were subject to rent control; (2) MHC induced them to sign; (3) the tenants would not have signed if they had understood the consequences; (4) the terms were not explained to them; (5) there were no negotiations; (6) the tenants were misled; (7) MHC's "misrepresentations were received by senior citizen tenants who had become accustomed to entering into the standard 12 Month Agreement while continuing to receive

the rent control benefits"; (8) each lease "has been voided by the tenants who entered into it"; and (9) MHC's pattern and practice of misrepresenting the lease terms was shown by "all the testimony."

The Board found the tenants' testimony to be credible and "never rebutted." But it did not allow MHC to test the tenants' their veracity or rebut the testimony through cross-examination. The tenants had an unfair advantage. They could select the facts they wanted the Board to hear, and avoid questions concerning those facts. The tenants also gave narrative statements, and one read from a prepared text.

There are valid reasons for restricting cross-examination in some administrative proceedings. But this was not a quasi-legislative hearing or an informal public hearing where speakers are not sworn and cross-examination could inhibit public comment. (Cf. *E.W.A.P., Inc. v. City of Los Angeles* (1997) 56 Cal.App.4th 310, 323 [65 Cal.Rptr.2d 325]; *Rivera v. Division of Industrial Welfare* (1968) 265 Cal.App.2d 576, 586 [71 Cal.Rptr. 739].)

This was an adversarial hearing where the tenants requested the Board to make findings against MHC. The rent control ordinance requires findings and testimony under oath, and the board exercised "judicial-like" powers in deciding the parties' rights involving their individual leases. (*McHugh v. Santa Monica Rent Control Bd.* (1989) 49 Cal.3d 348, 372, 385 [261 Cal.Rptr. 318, 777 P.2d 91].) Where a board makes a decision based on a party's testimony, the adversary is entitled to question his or her opponent. (*515 Associates v. City of Newark* (D.N.J. 1977) 424 F.Supp. 984, 995, fn. 20; see also *Goldberg v. Kelly, supra,* 397 U.S. at pp. 269–270; *Palmer v. Rent Control Board of Brookline, supra,* 386 N.E.2d at p. 1050; *Rivera v. Division of Industrial Welfare, supra,* 265 Cal.App.2d at p. 586.)

Moreover, the reasons given for precluding cross-examination were unpersuasive. The tenants' objection that they were unprepared for cross-examination raised questions about their direct testimony. Frank's view that cross-examination should be denied because it "is a fearful thing" shields parties who may have something to hide and impedes factfinding. Cross-examination is the " ' "greatest legal engine ever invented for the discovery of truth" ' [citations]." (*Fost v. Superior Court* (2000) 80 Cal.App.4th 724, 733 [95 Cal.Rptr.2d 620].) Each tenant's testimony involved individual circumstances and the accusations were serious. The tenants claimed MHC engaged in fraud and mob-like tactics and deceived the elderly. The Board undermined the fairness of the proceeding by preventing MHC from questioning its adversaries and then making findings against it based on the unchallenged testimony. (*Goldberg v. Kelly, supra,* 397 U.S. at p. 270.)

## II

### *Substantial Evidence*

■ The County contends we must affirm because the Board's findings are supported by substantial evidence. But "[a]s the cross-examination was erroneously excluded, we are unable to say how . . . the [Board] would have regarded the facts in evidence in light of further facts which might have been elicited." (*Powhatan Mining Co. v. Ickes* (6th Cir. 1941) 118 F.2d 105, 109.) That evidence supports the findings does not cure the constitutional defect. (*Ibid.*; see also *Pence v. Industrial Acc. Com., supra*, 63 Cal.2d at pp. 50–52.) "An improper denial of the right of cross-examination constitutes a denial of due process [citations]." (*Priestly v. Superior Court* (1958) 50 Cal.2d 812, 822 [330 P.2d 39].) The error is prejudicial. (*Fremont Indemnity Co. v. Workers' Comp. Appeals Bd., supra*, 153 Cal.App.3d at p. 971.) A new hearing is required. (*Sinaiko v. Superior Court, supra*, 122 Cal.App.4th at pp. 1142, 1146; *Pence, supra*, at pp. 50–52.)

## III

### *Interpreting the Leases*

The County claims we may affirm by deciding the facial validity of the leases without considering evidence about the parties' intent. It notes that the trial court found the leases were facially invalid. The court said Civil Code section 798.15, subdivision (a), provides that "[t]he rental agreement shall be in writing and shall contain . . . [t]he term of the tenancy and the rent therefor." It ruled that because paragraph 9 of the lease allows MHC to increase rents with a 90-day notice, it "is conditional, because it is subject to [MHC's] unilateral right to increase rent at any time."

■ The trial court interpreted paragraph 9 to be a device to override local rent control provisions by giving the park an unrestricted power to raise rents. It concluded that the written lease was therefore invalid and the tenancy was consequently subject to the rent control ordinance. But the court's interpretation of the lease was unduly restrictive and incomplete. We must interpret the lease "as a whole, with the various individual provisions interpreted together so as to give effect to all, if reasonably possible or practicable. [Citations.]" (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 473 [80 Cal.Rptr.2d 329].) We should not interpret it in a way "which renders some clauses nugatory, inoperative or meaningless. [Citations.]" (*Ibid.*)

Paragraph 9 of the lease provides that the "[p]ark may increase rents at any time upon 90 days' notice," but it goes on to state "and as allowed by state

and local laws." This last phrase indicates that the provisions of state laws, and applicable local rent control provisions, are incorporated into the lease. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 105 [99 Cal.Rptr.2d 745, 6 P.3d 669]; *City of Shasta Lake v. County of Shasta* (1999) 75 Cal.App.4th 1, 16 [88 Cal.Rptr.2d 863] [parties impliedly incorporate the provisions of applicable statutes into their contractual agreements].) The right to increase rents therefore is not unrestricted because it is necessarily subject to these laws.

■ Moreover, these leases are not facially invalid. Consistent with Civil Code section 798.15, each lease sets forth the specific term of tenancy and the rent. The trial court ruled that because the rental amount could change during the term of the tenancy, the lease was facially invalid. It assumed from its narrow reading of paragraph 9 that the lease could not be valid without a clause stating that the rent will never change regardless of circumstances. But rental increases during the term of the tenancy have been approved for mobilehome park owners who have shown good cause and have given proper advance notice. (Civ. Code, § 798.30; *Vance v. Villa Park Mobilehome Estates* (1995) 36 Cal.App.4th 698, 708 [42 Cal.Rptr.2d 723]; *Carson Mobilehome Park Owners' Assn. v. City of Carson* (1983) 35 Cal.3d 184, 194 [197 Cal.Rptr. 284, 672 P.2d 1297].)

The County claims the leases are nothing more than month-to-month tenancies and therefore subject to the rent control ordinance. But that is not the case. Each lease is for a 12-month term. Because the rent control ordinance does not apply to leases "which provide for more than a month-to-month tenancy" (San Luis Obispo County Code, § 25.03.010), these leases are exempt from the rent control ordinance. Our conclusion that they are exempt, however, does not end the inquiry.

■ The tenants claimed their testimony, not the leases, described the true nature of the tenancies. They said the parties had orally agreed that their tenancies were subject to the rent control ordinance. That is a critical factual issue. " 'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties.' [Citations.] [This] is determined by . . . the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties. [Citations.] [¶] Even if a contract appears unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence which reveals more than one possible meaning . . . . [Citations.]" (*Morey v. Vannucci* (1998) 64 Cal.App.4th 904, 912 [75 Cal.Rptr.2d 573].) Here several tenants claimed oral representations led them to believe their tenancies were subject to rent control. If that is the

case, documents alone will not disclose the parties' intent. (*Continental Airlines, Inc. v. McDonnell Douglas Corp.* (1989) 216 Cal.App.3d 388, 424 [264 Cal.Rptr. 779]; *Goodman v. Jonas* (1956) 142 Cal.App.2d 775, 791–792 [299 P.2d 424].)

The Board admitted evidence to explain what the parties intended and found that the leases were augmented by oral representations. (Civ. Code, §§ 1647, 1648; *Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 525 [117 Cal.Rptr.2d 220, 41 P.3d 46].) It correctly determined that testimony was needed. (*Morey v. Vannucci, supra,* 64 Cal.App.4th at p. 912.) It noted that the lease language "might exempt" it from the ordinance, but that testimony could reveal a different result. But the Board improperly restricted the testimony. After a hearing on remand, the Board could find that the tenants were misled, or that the park is estopped from claiming it is exempt from rent control. (*Ibid.*; *Lentz v. McMahon* (1989) 49 Cal.3d 393, 405–406 [261 Cal.Rptr. 310, 777 P.2d 83].) But such findings must be based on substantial evidence and on testimony subject to cross-examination.

## IV

### *The Court's Findings on Issues the Board Did Not Reach*

■ MHC contends the trial court erred by making findings on issues the Board did not consider. The court found the leases were invalid because they were illusory and uncertain. MHC notes these issues were not raised at the administrative hearing. We agree. Court review "is limited to issues in the record at the administrative level." (*City of Walnut Creek v. County of Contra Costa* (1980) 101 Cal.App.3d 1012, 1019 [162 Cal.Rptr. 224].) The agency should have the first opportunity to decide the issues. (*Ibid.*; see also *Sinaiko v. Superior Court, supra,* 122 Cal.App.4th at p. 1142; *Village Trailer Park, Inc. v. Santa Monica Rent Control Bd.* (2002) 101 Cal.App.4th 1133, 1140–1142 [124 Cal.Rptr.2d 857].)

■ Here the Board did not rule on these issues. It found the tenants rescinded the leases. But the tenants did not testify on the elements of rescission. The Board placed a two-minute limit on testimony which unduly restricted the evidentiary presentation. This led to a speedy hearing, but "administrative efficiency at the expense of due process is not permissible. [Citations.]" (*Fremont Indemnity Co. v. Workers' Comp. Appeals Bd., supra,* 153 Cal.App.3d at pp. 971–972.) The court should have remanded, requiring the Board to make new findings after a constitutionally adequate hearing. (*Sinaiko v. Superior Court, supra,* 122 Cal.App.4th at p. 1142; *Glendale Memorial Hospital & Health Center v. State Dept. of Mental Health* (2001) 91 Cal.App.4th 129, 140 [110 Cal.Rptr.2d 101].)

## V

### *Board's Jurisdiction on Remand*

MHC claims the Board lacks authority to apply judicial doctrines to determine the nature of the tenancies or decide whether tenants relied on oral representations about the leases. We disagree. "Determining whether a mobilehome lease is exempt from rent control is not an exclusively judicial function." (*Village Trailer Park, Inc. v. Santa Monica Rent Control Bd., supra,* 101 Cal.App.4th at p. 1142.) Here the Board, among other things, essentially found that MHC was estopped from claiming the tenancies were exempt from rent control because of its alleged misrepresentations to the tenants.

Equitable estoppel is a judicially developed doctrine, but the Board may apply it where the facts show a party was misled. (*Lentz v. McMahon, supra,* 49 Cal.3d at pp. 405–406.) In so doing, the Board applies general principles of law and equity. (*Ibid.*) When acting within its authority to regulate rents, the Board may decide the relevant legal issues (*ibid.*; *McHugh v. Santa Monica Rent Control Bd., supra,* 49 Cal.3d at p. 375), and such administrative decisionmaking, " 'if subject to judicial review, does not deny participants their . . . [entitlement] to [a] judicial determination of their rights.' [Citation.]" (*Village Trailer Park, Inc. v. Santa Monica Rent Control Bd., supra,* 101 Cal.App.4th at p. 1143.) The parties raise additional issues which the Board may not have to reach or which should be decided on a more complete record.

## VI

### *MHC's Unconstitutional Taking Claim Is Not Ripe*

MHC contends the rent control ordinance, as applied here, constitutes an unconstitutional taking of property. But the Board ruled, "the appropriate way to increase rents would be through a hardship rent increase. MHC may apply for such an increase if it believes it qualifies." MHC did not use all its remedies under the ordinance. Its taking claim is not ripe. (*Montclair Parkowners Assn. v. City of Montclair* (1999) 76 Cal.App.4th 784, 791, fn. 2 [90 Cal.Rptr.2d 598]; *Kavanau v. Santa Monica Rent Control Bd.* (1997) 16 Cal.4th 761, 785 [66 Cal.Rptr.2d 672, 941 P.2d 851].) Moreover, because we vacate the judgment and the Board's decision, we need not consider the trial court's rulings on MHC's constitutional challenges to the rent control ordinance or the parties' remaining contentions on appeal.

## DISPOSITION

The judgment is reversed and the cause is remanded to the trial court with instructions that it vacate the Board's decision and remand the matter to the Board for a new hearing. Because we have decided that the lease is facially valid, the Board shall allow cross-examination of testifying witnesses.

Costs on appeal are awarded to appellants.

Coffee, J., and Perren, J., concurred.