Filed 3/27/25  Schmid v. County of Sonoma CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| FREAR STEPHEN SCHMID et al.,<br><br>    Plaintiffs and Appellants,<br>v.<br>COUNTY OF SONOMA,<br><br>    Defendant and Respondent. | A169274<br><br>(Sonoma County<br>Super. Ct. No. SCV271292) |

Plaintiffs Frear Stephen Schmid and Astrid Schmid, the owners of a 61-acre property in Sonoma County, were cited for undertaking unpermitted repairs to their barn, and subsequently they sought to legalize their work under a mechanism of local law referred to as an "agricultural exemption." The exemption would allow them to do the work without a building permit. By this administrative mandamus action, they seek to overturn a decision of the Sonoma County Board of Building Appeals that declined to grant them the exemption without an inspection of the barn's interior to verify its compliance with the requirements for such an exemption.

The trial court granted Sonoma County's demurrer without leave to amend, the Schmids now appeal and we affirm.

1

# BACKGROUND

## I.

Sonoma County Code section 7-7 (section 7-7) allows property owners "[a]t [their] option" to seek an exemption from local building permit requirements for certain agricultural structures.[1] (See § 7-7.) With some enumerated exceptions not at issue here, it applies to "buildings, or repairs, alterations, additions, or remodels to buildings designed and constructed for use in housing farm machinery, animals, supplies or products that are harvested from or utilized on a parcel of land." (*Id.*, subd. (a).)

Section 7-7 states an applicant wishing to obtain the exemption "shall obtain an exemption permit" (§ 7-7, subd. (a)) and requires the applicant to file a written application for the exemption "[p]*rior to* the erection, construction, conversion, enlargement or major alteration of any building or structure situated on agricultural land . . . ." (*Id.*, subd. (b), italics added). The ordinance specifies the mandatory contents of an application, including "such further information as the chief building official may require."[2] (*Ibid.*) It does not state how an application must be processed, but states that "[t]he chief building official must record a notice of agricultural exemption with the

---

[1] Unless otherwise indicated, all further statutory references are to the Sonoma County Code.

[2] In full, section 7-7, subdivision (b) states the application must contain: "(1) A verified statement in writing signed by the owner of the agricultural land regarding each of the requirements contained in this section; [¶] (2) Description of the present use of the land; [¶] (3) Description of the building or structure to be exempted and its proposed use; [¶] (4) Name and address of the owner of the land and the assessor's parcel number. The applicant must be the owner; [¶] (5) An accurate dimensioned plot plan showing all buildings, structures, property lines, streets and roads and the means of access thereto; [¶] (6) Such further information as the chief building official may require; [¶] (7) Payment of the exemption fee."

county recorder following issuance of an agricultural exemption." (§ 7-7, subd. (c).)

The Policy and Procedure Manual for the County's Permit and Resource Management Department (PRMD), only a portion of which is in the record, also requires a "site evaluation" before issuance of the exemption, stating that its purpose is to determine whether the building is located in a flood hazard zone, whether a geotechnical report is required due to soil stability, to verify that the proposed building conforms to setback requirements, and to "[v]erify that an agricultural use exists on the property."

After an exemption is approved, there is a three-year deadline for the work to be completed. (§ 7-7, subd. (d) ["the structure or repairs, alterations, additions, or remodels for which the exemption is approved must be completed within three (3) years of the date of the authorization for exemption"].) In addition, section 7-7 states that "[w]hen the structure or repairs, alterations, additions, or remodels is completed, an inspection must be performed by permit resource management division staff." (*Ibid*.) It states that the inspection's "sole purpose . . . shall be to insure that the structure is complete and is being used for the use stated on the application for exemption." (*Ibid*.)

The issue here is not *whether* local officials may inspect the interior of plaintiffs' barn in order for them to avail themselves of an agricultural exemption but *when*.

3

## II.

In or around 2000, the Schmids began repairing a barn located on their Sonoma County property.[3]  In October 2000, Sonoma County (the "County") issued a notice of violation for the property, citing the Schmids for unpermitted construction on the barn, specifically noting unpermitted "foundation work and out building."

About nine years later, in July 2009, a manager from the code enforcement division sent them a follow up letter inquiring about the status of the unpermitted work.  The letter noted that although the initial letter had been sent to the wrong address, a code enforcement inspector had inspected the property in October 2000, "verified active construction of a detached accessory" and verbally advised the Schmids that "a building permit or agricultural exemption would be required" for the work.  The follow-up letter noted, however, that no building permit, agricultural exemption or demolition permit had yet been obtained.  The Schmids were instructed to contact the code enforcement division within 30 days "to resolve this issue."

Nine years later still, in June 2018, and nearly 20 years after they allegedly began the repairs, they received a final notice citing them for the unpermitted construction, which the County posted on their front gate.  The June 2018 notice instructed them to "immediately" either demolish the unlawful construction or legalize it "by obtaining all required permits and

---

[3] Consistent with the legal standard governing demurrers, we base our factual discussion on " 'all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law,' " and on matters that may be judicially noticed.  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  The latter includes all the records the trial court judicially noticed.

4

obtaining a verification inspections [*sic*]," and warned them that failure to abate the violation within 30 days would result in the assessment of penalties and potentially subject them to suit.

The Schmids then contacted local permitting staff to discuss the situation, said the barn was and would continue to be used for agricultural purposes and were advised that they were entitled to seek an agricultural exemption under section 7-7. They were given an application form and were told that no inspection of the barn's interior would be required for the exemption to issue. In reliance on those assurances, they allegedly expended time and money in pursuing the exemption, paid the exemption fee and submitted an application for the exemption (on June 28, 2018). Although their application did not expressly list the work for which they sought an exemption, the Schmids clearly indicated that it was for past, completed repairs.[4]

Over the next several weeks, they allegedly "received the necessary sign offs by all required Permit Sonoma divisions (zoning, building, well [and] septic, stormwater/drainage/grading, and code enforcement)," "were advised there would be . . . a site evaluation to confirm setbacks, the topography, and to confirm that the property had an agricultural use."

---

[4] On their application, they crossed out pre-printed language stating that "I agree that construction on the proposed building shall not commence until the site evaluation has been completed and I have received written notification of approval from PRMD." In its place they substituted the hand-written notion, "The building is pre-existing from circa 1940s and was repaired circa 2000." A code enforcement official's notation on the application states that issuance of the exemption "will clear [the] violation" for which they had been cited.

On August 2, 2018, a permitting staff member, Paul Marquez, conducted the site evaluation. He drove through the grazing pasture directly to the barn, which was locked, did not and could not enter it or see inside it (it has no windows) and left.[5] The location of the barn and the use of the property allegedly meet the ordinance's requirements for an agricultural exemption. Nevertheless, several days later, the Schmids received a letter from Marquez stating, " 'After visiting the site, I have determined that the proposal does not meet the ordinance requirement due to vehicle storage other than farm, agricultural, and feed.' "

The Schmids explained in a responsive email that the vehicles they were storing outside the barn *were* being used for agricultural purposes. In a follow up email, Marquez told them he wanted to " 'walk the site' " and see *inside* the barn.

The impasse went nowhere. The Schmids advised Marquez the barn had been built in the 1940s and was on the tax rolls as an agricultural barn, and they objected to an inspection of its interior. They told another local official, Rob Spaulding who is a manager of the Building and Safety Division, they could open the barn but " 'all he will see is hay.' " So Marquez made a second site visit, and Stephen Schmid allegedly "opened the shut barn doors showing the barn stacked with hay stored in there to feed the beef cattle on the property."[6] In a follow-up email, Spaulding sent Schmid a photograph depicting a wall of hay bales blocking the door and stating that although

---

[5] According to a staff report prepared later for the administrative appeal hearing, Marquez was able to see inside through a crack between the barn's wall and door.

[6] There are no allegations that Marquez was allowed inside the barn to inspect it.

6

Schmid had agreed to provide them interior access to the barn, the inspector had not been able to get inside ("I'll let the picture . . . speak for itself").  The email reminded Schmid that the exemption application was a "basis for closing a code enforcement violation," extended the Schmids two more weeks to complete the process by calling for a reinspection and informed them if they did not do so the application would be denied.  After that, local permit officials continued to ask permission to inspect the barn's interior before issuing the exemption, but the Schmids continued to refuse.[7]

The Schmids appealed the (implicit) denial of their agricultural exemption to the County's Board of Building Appeals, which held an evidentiary hearing and affirmed the denial.  The Schmids conceded in the administrative hearing that the County would be allowed to inspect the barn's interior *after* the exemption permit issued, within three years of the work's completion.  But they asserted that the only inspection allowed *before* the exemption permit issued was to confirm the agricultural use of their land

---

[7] One exasperated official wrote, "You conducted work on your structure without a permit. [¶] You were cited for work without a permit. [¶] You chose to pursue an ag exempt status for your structure as opposed to obtaining a building permit. [¶] We informed you a site visit was necessary to verify that the structure meets the criteria for an ag exempt structure. FYI, a barn does not automatically equate to an ag exempt structure. [¶] You refused County staff access to the structure and therefore County staff could not verify the claim of an ag exempt structure. [¶] You then informed our Director and then Rob Spaulding that you would provide such access and we arranged for a second site visit. [¶] Access was denied due to placement of a wall of hay in front of the door way, even though you had affirmed access would be granted. [¶] Given your denial of access and lack of cooperation, there is nothing building division staff can do to verify the nature of the structure and nothing building staff can do to help you legalize the violation. As such we will be transferring the case back to Code Enforcement."

and to confirm the barn met set back and other topographical conditions, which it did.

The Schmids then filed suit in federal court challenging the denial of their agricultural exemption on both federal and state law grounds. They alleged that under local law, they had satisfied section 7-7 and were entitled to the issuance of an exemption as a matter of law, yet the County refused to issue one without an inspection. They alleged that the County's insistence on conditioning the exemption on an interior inspection of the barn constituted an unreasonable search in violation of the Fourth Amendment and also deprived them of due process of law. They also alleged that they were denied due process of law in the administrative appeal "due to the unfair, impartial [*sic*], and biased manner and lack of meaningful opportunity to be heard," which included interference with their right to cross-examine witnesses as well as the board's "lack of understanding of the applicable law and facts." Based on these allegations, they asserted a cause of action under section 1983 of title 42 of the United States Code, a cause of action for "violation of California rights" and a cause of action for administrative mandamus under Code of Civil Procedure section 1094.5.

The district court granted summary judgment for the County. It ruled there was no Fourth Amendment violation because local law does *not* prohibit an inspection of the barn under the circumstances:

"The Schmids say that the Building Code allowed inspections of their property only after an exemption was issued. . . . The contention is . . . based on a strained reading of the Building Code. The Code requires an 'inspection' after a structure is completed or improved to verify that it is 'being used for the use stated' in an application for an agricultural exemption. [Citations.] While the Building Code assumes that an exemption will be obtained before

8

construction begins, and that an inspection will take place afterward to verify proper use [citations], the Schmids began construction first and applied for an exemption later. *They point to nothing in the Building Code that requires Sonoma to issue an exemption for unauthorized work that has already taken place before it can verify a proper agricultural use for the structure. . . .* [¶] These facts put to rest any Fourth Amendment concerns about the inspections, and the Schmids have not demonstrated otherwise." (Italics added.)

The district court held there was no substantive due process violation because the denial of the agricultural exemption was not arbitrary or irrational, essentially for the same reason. It explained that local law "expressly requires a person to obtain a building permit or exemption *before* engaging in construction" and yet "[t]he Schmids never obtained a building permit, and applied for an agricultural exemption only after performing construction on their barn." Thus, the County's insistence on a further inspection to determine if the barn was being used for an agricultural purpose was not irrational or arbitrary.

The district court also ruled there was no procedural due process violation at the administrative appeal because the Schmids "received a meaningful opportunity to be heard," and "[n]othing in the record indicates that the Board prejudged their case, had a personal or pecuniary interest in the outcome, or otherwise denied the Schmids a fair hearing by an impartial tribunal." It rejected as "wholly speculative and unsupported by any evidence" their claim that the Board was biased against them. And it rejected their argument that limits on their ability to cross-examine witnesses denied them a fair hearing. "[N]othing in the record suggests that the absence of cross examination meaningfully affected their ability to tell

9

their side of the story in a manner not consonant with due process." And it rejected their argument that cross-examination was necessary to point out inconsistencies in the County's case and the inspector's testimony, because "the evidence shows that they were afforded a full opportunity to make those points" and "[t]he record does not indicate that the Schmids' views or concerns were stifled in any way."

The district court declined to exercise supplemental jurisdiction over the state law claims and dismissed them without prejudice.

The Ninth Circuit affirmed. Like the district court, in upholding the rejection of the Schmid's federal claims it decided several subsidiary issues.

It upheld the rejection of their Fourth Amendment claim on the ground that the County's demand for an inspection was proper under local law. We quote in relevant part the Ninth Circuit's decision on this issue: "The Schmids argue that Sonoma County is violating the unconstitutional conditions doctrine by pressuring them to submit to an interior inspection of their barn before issuing an exemption in violation of their Fourth Amendment rights. Appellants contend that the inspection must occur *after* issuance of the permit or exemption as stated in Section 7-7(d) of the Sonoma County Municipal Code. [¶] We reject Appellants' argument. . . . [¶] Appellants constructed an unpermitted barn on their property. Section 7-7 of the Sonoma County Municipal Code makes clear that an application for the agricultural exemption should be made before the structure is constructed and placed on the land. Appellants objected to an inspection after the barn was constructed. But *an inspection is proper*. As outlined in Section 7-7(d) of the County's Municipal Code, once the construction on the structure (i.e., the barn) is completed, an inspection must be performed by the County's permit resource management division staff. The Schmids completed construction of

10

the barn years before any discussion of an inspection. *Now that they have applied for a permit exemption, the County may require an inspection.*" (Italics added.)

It upheld the rejection of their federal procedural due process claim on the ground that the Schmids were not denied a fair administrative hearing. It explained: "Appellants were not denied their procedural due process rights because they received notice of, and were able to participate in, the hearing before the [Board of Building Appeals]. Appellants received ample opportunity to present their evidence. Appellants plead[ed] their case and the County put on evidence. Appellants assert that the hearing was conducted in an impromptu, 'ad hoc manner,' with Appellants being denied the right to cross examine witnesses or present evidence in a meaningful fashion. Under normal administrative law procedures, 'the opportunity to cross-examine witnesses [is not] mandatory in all cases.' [Citation.] Appellants fail to establish any due process violation."

After losing in federal court, the Schmids initiated this lawsuit in state court. According to the trial court, they pled "the same" factual allegations as in federal court.[8] The trial court sustained a demurrer to their original complaint, ruling that: (1) they were collaterally estopped from asserting the County's denial of the agricultural exemption permit was arbitrary and capricious; (2) they stated no viable cause of action under section 7-7 because their allegations "demonstrated that the work was already completed, rendering [their] claims regarding inspection and approval of incomplete

---

[8] Their original complaint is not in the record nor are the original demurrer papers.

11

work facially inapplicable," and (3) their "reliance on estoppel . . . was groundless." It granted them leave to amend.

Plaintiffs then amended their complaint, which is the operative pleading. Their amended complaint adds new allegations that the barn was *not* complete when they sought the agricultural exemption permit and that the completeness of the barn was not placed at issue in the federal case. As amended, they now allege that when they repaired the barn in 2000, they removed some structural bracing that they had intended to replace but never did because they were threatened with local code enforcement. They also now allege that after they submitted their application for the exemption years later, a "plan checker" named Mr. Tsai reviewed their hand-drawn plans for the barn, "agreed that the existing barn structure complied with the exemption permit requirements," and suggested they add additional structural bracing in addition to the replacement bracing they had been wanting to install. But for these new allegations, the factual allegations of their amended complaint remain substantively similar (indeed, nearly identical) to those of their federal complaint.

As amended, their complaint asserts three causes of action: (1) a cause of action for "estoppel" (First Cause of Action), alleging that the County is estopped from denying them the agricultural exemption because they relied on oral assurances by county officials, as well as local county policies and ordinances, that there would be no inspection of the barn as a condition of issuing the agricultural exemption, and in reliance they expended considerable time, money and effort in pursuing the exemption; (2) a cause of action for a writ of administrative mandamus under Code of Civil Procedure section 1094.5 (Second Cause of Action) alleging that the Board's decision was wrong both legally and factually, that they were denied a fair hearing

12

because they were prevented from examining witnesses, and that the Board failed to make adequate findings under *Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506 (*Topanga*) to support its decision; and (3) a cause of action for "Declaratory Relief Enjoining Violations of California Rights" (Third Cause of Action), seeking a declaration that they are entitled to the agricultural exemption and an injunction requiring the County to issue one.

The County once again demurred to the amended complaint on multiple grounds including that it is barred by collateral estoppel because the courts conclusively adjudicated the issues against the Schmids in the federal action. In support, the County sought judicial notice of various records from the district court action, which the trial court granted. The trial court sustained the demurrer without leave to amend, in a nine-page (single-spaced) written ruling. It entered a judgment of dismissal, and this timely appeal followed.

## DISCUSSION

On review of the order sustaining the County's demurrer, we review the complaint de novo " 'to determine whether it alleges facts stating a cause of action under any legal theory' " and " 'assume the truth of all properly pleaded factual allegations.' " (*SJJC Aviation Services, LLC v. City of San Jose* (2017) 12 Cal.App.5th 1043, 1051-1052.) "We also consider matters that may be judicially noticed and facts appearing in any exhibits attached to the petition [for administrative mandamus] and complaint. [Citations.] We do not, however, assume the truth of 'mere contentions or assertions contradicted by judicially noticeable facts.' (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20; see also *Blatty v. New York Times Co.* (1986) 42 Cal.3d 1033, 1040 ['when the allegations of the complaint contradict or are inconsistent

13

with such facts, we accept the latter and reject the former'].)" (*Id.* at p. 1052.) "After reviewing the allegations of the [complaint] the accompanying exhibits, and the matters properly subject to judicial notice, we determine whether the [complaint] states a cause of action as a matter of law." (*Ibid.*, fn. omitted.)

## I.

### *The County's Request for an Inspection Was Proper.*

Central to this appeal, and this lawsuit, is the meaning of section 7-7. The Schmids' lead argument is that section 7-7 unambiguously does not allow for an inspection of their barn's interior until *after* they have been issued an agricultural exemption permit.

That interpretation of local law underpins virtually all their claims and arguments (except for the procedural aspects of their administrative mandamus cause of action, which we address *infra*). Based on that interpretation, they assert that they validly pled not only a violation of the ordinance itself but also state constitutional and statutory violations which, they say, differ from the federal constitutional claims rejected in federal court.

We reject the Schmids' construction of section 7-7 for multiple reasons.

### A.    Collateral Estoppel

The Schmids' interpretation of section 7-7 has been conclusively adjudicated against them in the prior federal lawsuit. Both the district court and the Ninth Circuit ruled that the County *could* properly insist on an inspection in processing the Schmids' application for an agricultural exemption. In rejecting their federal constitutional claims, the Ninth Circuit expressly held that "[n]ow that they have applied for a[n] [agricultural] permit exemption, the County may require an inspection" under section 7.7.

14

As the trial court ruled, collateral estoppel now precludes the Schmids from relitigating this determination.

Collateral estoppel has five elements: " 'First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. [Citations.]' " (*Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 511.)

Here, the Schmids argue collateral estoppel does not apply because the "identical issue" was not presented in the federal case. But it was. In the federal case, their claims for violations of their Fourth and Fourteenth Amendment rights were based on allegations that *the County was required to grant their June 28, 2018 request for an agricultural exemption under section 7-7 without an inspection and yet the County refused to do so*, thereby violating their federal constitutional rights to be protected against both unreasonable searches and the exercise of arbitrary governmental authority. Both the district court and the Ninth Circuit rejected the Schmids' federal claims on the ground that their interpretation of section 7-7 was wrong and that the County's request for an inspection *was lawful* under section 7-7. That is the identical issue they seek to relitigate here. (See *Roberson v. City of Rialto* (2014) 226 Cal.App.4th 1499, 1510 [parties in separate administrative mandamus actions raised identical issue, because "both claims sought to invalidate the project approvals because the notice of the July 1 city council hearing did not indicate that the planning commission was recommending that the city council adopt the project approvals"].)

15

The Schmids also argue that "state courts are not bound by federal courts decisions when it comes to the meaning of state law." But their cited authority does not involve collateral estoppel, it concerns the precedential weight of caselaw. (See *People v. Zapien* (1993) 4 Cal.4th 929, 989 [" 'Decisions of the lower federal courts interpreting federal law, although persuasive, are not binding on state courts' "].)

Finally, citing authority stating—but not applying—the principle that collateral estoppel will not be applied if "injustice" would result (*Barragan v. Banco BCH* (1986) 188 Cal.App.3d 283, 296), they argue that it would be unjust to bar them from relitigating issues decided in federal court. This wholly undeveloped point is unclear and insufficient to persuade us. Moreover, the equities, if any, favor affording the County finality regarding this question. The Schmids violated local law. For years the County tried to help them resolve their code violation, desisted from imposing penalties or filing suit and made gave them every opportunity to obtain an agricultural exemption. All the Schmids had to do to move their application forward was to allow the County inspectors to enter into their barn. Instead, they refused; filed an administrative appeal; and filed a federal lawsuit. As a matter of law, based solely on the pleadings and matters judicially noticeable, no injustice would result from preventing them from relitigating the meaning of section 7-7 after all this time, when the question has been definitively settled in the federal forum *they* chose.

## B.    The Merits

Even if the Schmids were not barred from relitigating this question, they have not persuaded us that their construction of section 7-7 is correct. As the Schmids conceded in the administrative hearing, section 7-7 clearly allows for an inspection after construction is completed to verify that it

16

qualifies for agricultural exempt status.  It states:  that "[w]hen the structure or repairs, alterations, additions, or remodels is completed, an inspection must be performed by permit resource management division staff."  (§ 7-7, subd. (d).)  When in June 2018, after years of ignoring County warnings, they finally applied for the exemption, they stated in their application that "[t]he building . . . was repaired *circa 2000.*"  (Italics added.)  They offer no coherent explanation why the County was not entitled to inspect the unpermitted repairs they had performed 18 years earlier to verify they qualified for agricultural exempt status.[9]

### C.    Allegations That the Work Was Incomplete

The Schmids' amended allegations about uncompleted bracing work do not alter our conclusion—neither as to the conclusive effect of the federal judgment nor on the merits as to the proper application of section 7-7.

In the first place, their allegations must be disregarded on demurrer because they conflict with the contents of judicially noticeable material.  As noted, their application stated that the only work for which they sought an exemption were repairs that had been done "circa 2000."  Indeed, as the trial court noted, the Schmids affirmatively "allege that they prepared and presented the Permit application in 2018 in order to address the notice of

---

[9] In support of their construction, the Schmids offer the hypothetical example involving the *proposed* conversion of a truck repair business into an agricultural exempt building.  They assert that inspecting such a property before issuing the exemption would be completely meaningless because the whole point of section 7-7 is geared toward future use not current use.  The hypothetical is inapt.  If the owner of the truck repair business did what the Schmids did—i.e., build *first*, ask for permission *later*—the County would have the right under subdivision (d) to inspect the property at the time of the exemption application.  In that situation, like the 2000 barn repairs, the work would be completed.

17

violation for the unpermitted work which [they] had done on the Barn in 2000," and the bracing was "not part of the plans [they presented] or Permit application process at all." Thus, to the extent their amended allegations about uncompleted work could be construed to mean the work *for which they sought the exemption* had not yet been completed when they applied for the exemption, they would be inconsistent with the content of their actual permit application, which the trial court judicially noticed. (See *Coshow v. City of Escondido* (2005) 132 Cal.App.4th 687, 702 [in assessing whether complaint states valid cause of action, courts must disregard "allegations contrary to law or facts which are judicially noticed"].) Simply put, they applied for an agricultural exemption for work they had performed in 2000; under the literal language of subdivision (d) of section 7-7, mandating an inspection "[w]hen the structure or repairs, alterations, additions, or remodels is completed," the County was entitled to inspect it.

The Schmids' construction of section 7-7 also ignores the fact that it was *they* who violated the ordinance by failing to apply for an agricultural exemption permit "[*p*]*rior* to" the "erection, construction, conversion, enlargement or major alteration of" their barn. (§ 7-7, subd. (b), italics added). This created a conundrum, because section 7-7 does not expressly address or contemplate granting an agricultural exemption after the fact. Nevertheless, the County permitted them to seek one rather than subjecting them to code enforcement penalties and proceedings. And yet they essentially invite us to conclude that in these circumstances, when an applicant has already proceeded in violation of local law, section 7-7 *unambiguously* requires the County to issue the applicant an exemption upon request without any inspection.

We do not accept that construction. Even if such an applicant sought an agricultural exemption for work that was still underway and not yet complete, section 7-7 states that an application for an agricultural exemption permit must include "such further information as the chief building official may require." (§ 7-7, subd. (b).) That language is surely broad enough to encompass the applicant's consent to an inspection as a condition of retroactively granting an agricultural exemption permit for work that has already commenced without *any* permit, if for no other reason than to verify the truth of matters stated in the application.

Having failed to alleged facts sufficient to show the County's demand for an inspection violated section 7-7, all substantive claims pled by the Schmids for violation of state or local law fail. The only one they directly address on appeal is their cause of action for estoppel, to which we next turn.

## II.

### *Estoppel*

The Schmids argue their first cause of action validly states a cause of action to estop the County from requesting an inspection before issuing them an agricultural exemption permit.

According to the Supreme Court, estoppel generally requires four elements: " ' "(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." ' " (*Lentz v. McMahon* (1989) 49 Cal.3d 393, 399 (*Lentz*).) When the party to be estopped is a governmental body, there is an additional requirement: " 'The government may be bound by an equitable estoppel in the same manner as a private party *when the elements requisite to*

19

*such an estoppel against a private party are present* and, in the considered view of a court of equity, *the injustice which would result from a failure to uphold an estoppel is of sufficient dimension to justify any effect upon public interest or policy which would result from the raising of an estoppel.' "* (*Lentz*, at p. 400, italics added, quoting *City of Long Beach v. Mansell* (1970) 3 Cal.3d 462, 496-497.) This public policy element, which was the focus of the trial court's decision, entails a balancing test.[10] (See *Lentz*, at p. 400.)

On appeal, the Schmids confine their arguments only to the public policy element. But even if we assume their factual allegations are sufficient to state a cause of action for estoppel on the other elements, they have not demonstrated that " 'the injustice which would result from a failure to uphold an estoppel is of sufficient dimension to justify any effect upon public interest or policy which would result from the raising of an estoppel.' " (*Lentz, supra*, 49 Cal.3d at p. 400.) They have not explained how, on the one hand, their alleged expenditure of an application fee and the investment of some time and energy to request an exemption that will help them legalize unpermitted (i.e., illegal) repairs outweighs the public interest in ensuring that agricultural exemptions from otherwise applicable zoning laws of general application are granted only to those who legitimately are entitled to them. Nor do they explain how requiring them to undergo an inspection that even *they* concede will at some point be proper would constitute an injustice.

---

[10] The trial court ruled that the estoppel cause of action is barred under the principle that the doctrine of estoppel " 'may [not] be invoked against a governmental body where it would operate to defeat the effective operation of a policy adopted to protect the public.' " (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transp. Authority* (2000) 23 Cal.4th 305, 316.)

Their arguments on this element boil down to the assertion that the inspection demanded of them violates local law. But, as just discussed, that issue has been conclusively adjudicated against them in the federal lawsuit and it is also wrong. And because of that, their allegations are insufficient to support an estoppel. When a landowner receives permission from a local government official or body to undertake construction that violates local zoning laws, the government is not estopped from changing its position and then enforcing its zoning law. As explained in authority cited by the trial court, "[t]he courts have expressly or by necessary implication consistently concluded that the public and community interest in preserving the community patterns established by zoning laws outweighs the injustice that may be incurred by the individual in relying upon an *invalid* permit to build issued in violation of zoning laws." (*Pettitt v. City of Fresno* (1973) 34 Cal.App.3d 813, 820 [citing and discussing authorities].) So here, allegations that they were initially told no inspection would be needed (at best, mistaken advice that violated local law) are insufficient to support an estoppel.[11]

We also uphold the court's demurrer ruling on this cause of action for the separate reason that the Schmids have not demonstrated their

---

[11] The Schmids assert that *Pettit* is distinguishable because "[h]ere, in contrast, there is no alleged zoning violation, nor is there a conceivable 'public interest' involved." That assertion is doubly incorrect. *They* were cited for conducting repairs in violation of local zoning laws. Further, to the extent they allege they were told no inspection was needed at this stage of their efforts to cure the notice of their pre-existing zoning violations, that advice was incorrect under section 7-7, which also is a local zoning law. Hence, to the extent they interpreted that advice as a green-light to proceed without allowing an inspection, acting on it was also contrary to the zoning law.

21

allegations state a valid cause of action for estoppel under the four required elements. They only *assert* that they have done so. But neither of the authorities they cite for that proposition addresses estoppel (see *Woody's Group, Inc. v. City of Newport Beach* (2015) 233 Cal.App.4th 1012; *Cohan v. City of Thousand Oaks* (1994) 30 Cal.App.4th 547), and they do not discuss the four elements much less show how they apply here.[12] Thus, even if the trial court erred in its analysis of the public policy element, we must affirm on this basis alone. (See *Gaynor v. Bulen* (2018) 19 Cal.App.5th 864, 876 (" 'If the trial court's decision is correct on any theory . . . , we affirm the order regardless of the correctness of the grounds on which the lower court reached its conclusion' "].)

## III.

### *Administrative Mandamus*

This brings us to the second cause of action for a writ of administrative mandamus under Code of Civil Procedure section 1094.5.

The County demurred to this cause of action in its entirety on the ground that it was barred by collateral estoppel, and the trial court sustained demurrer on this basis.

On appeal, the Schmids raise three issues. They assert: (1) the Board of Building Appeals failed to make findings required by *Topanga*; (2) the trial court lacked the complete administrative record; and (3) they pled facts

---

[12] For example, estoppel " 'does not apply to representations on matters of law; and that the general rule is that the government is neither bound nor estopped by the acts of their agents in giving incorrect legal advice.' " (*Park Area Neighbors v. Town of Fairfax* (1994) 29 Cal.App.4th 1442, 1450.)

sufficient to show they were denied a fair administrative hearing, a claim they say is not barred by the federal court's judgment.

## A. Adequacy of the Administrative Findings

The Board of Building Appeals denied the Schmids' appeal in a one-sentence decision, stating that "The unanimous decision of the Board of Building Appeals is to uphold the Chief Building Official's denial of Agricultural Building Permit Exemption for a barn located on the above parcel." The Schmids assert they alleged sufficient facts to warrant mandamus relief because this violates the requirements under *Topanga* for adequate administrative findings. (See generally *Topanga, supra*, 11 Cal.3d 506.) The Schmids have failed to carry their burden of persuading us, for several reasons.

First, they have not demonstrated that the trial court erred in concluding that they are collaterally estopped from litigating the adequacy of the Board's findings. We start with the presumption that the court *did not err,* and it is incumbent on them to affirmatively demonstrate otherwise. (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) The Schmids' discussion in their opening brief as to why collateral estoppel is inapplicable (across the board) touches on other aspects of their administrative mandamus cause of action but contains no discussion or analysis of collateral estoppel as applied to the *Topanga* issue.[13] They have thus abandoned any

_____

[13] The County does not address this issue either, but that does not relieve the Schmids, as the appellants, from making an affirmative showing of error to overcome the presumption of correctness we afford the trial court's ruling.

We note that findings are required by federal law too. To comply with federal due process, an administrative decisionmaker "should state the reasons for his determination and indicate the evidence he relied on,

23

argument that they are *not* collaterally estopped from challenging the adequacy of the Board's findings under state law. (See *Meeks v. AutoZone, Inc.* (2018) 24 Cal.App.5th 855, 878 [" 'Issues not raised in an appellant's brief are deemed waived or abandoned' "].) This alone compels us to reject their argument about the legal sufficiency of their *Topanga* allegations.

The Schmids also have failed on the merits to persuade us that they sufficiently alleged a *Topanga* violation. The County argues, among other points, that the Board of Building Appeals received a staff report containing factual analysis and exhibits, and it cites the principle that "where reference to the administrative record informs the parties and reviewing courts of the theory upon which an agency has arrived at its ultimate finding and decision it has long been recognized that the decision should be upheld if the agency 'in truth found those facts which as a matter of law are essential to sustain its . . . [decision].' " (*McMillan v. American Gen. Fin. Corp.* (1976) 60 Cal.App.3d 175, 184 [staff report]; see also *Topanga, supra,* 11 Cal.3d at pp. 518-519 [analyzing "summary of 'factual data' " as agency findings]; *No Slo Transit, Inc. v. City of Long Beach* (1987) 197 Cal.App.3d 241, 257-260 [no *Topanga* violation where documentation in the record "contains detailed and specific analyses upon which [local agency] predicated its [decision]"].)

The staff report addresses and specifically responds to each of the Schmids' allegations in their administrative appeal. Among other topics it addresses, it rejects their contention the County proceeded unlawfully by

---

[citations], though his statement need not amount to a full opinion or even formal findings of fact and conclusions of law." (*Goldberg v. Kelly* (1970) 397 U.S. 254, 271.) A proper collateral estoppel argument on appeal would entail comparative analysis of the state and federal standards for adjudicative findings, an analysis the Schmids have not undertaken.

refusing to finalize the exemption on the ground that "Sonoma County Code section 7-7(d) imposes a duty on Permit Sonoma [personnel] to inspect the building:  'an inspection must be performed . . . to insure that the structure is complete and is being used for the use stated on the application for exemption.' "  The report also notes that "waste plumbing is never allowed within Agricultural Exempt structures.  Please also note the limitations placed on electrical, mechanical, water systems and structural design that must also be verified [*sic*]. Restrictions such as these cannot be verified without interior access to the structure."

The Schmids do not respond to the County's assertion that the staff report suffices under *Topanga* much less analyze the report's contents. Accordingly, they fail to show that the staff report is insufficient to "bridge the analytic gap" between the evidence and the agency's decision (*Topanga*, *supra*, 11 Cal.3d at p. 515).

The Schmids also have not demonstrated they sufficiently alleged the claimed *Topanga* error (assuming there was one) prejudiced them.  A writ of mandate lies to correct "any *prejudicial* abuse of discretion."  (Code Civ. Proc., § 1094.5, subd. (b), italics added.)  Therefore, an agency's failure to make adequate findings under *Topanga* is not a basis for mandamus relief if the error is harmless.  (See *Alpha Nu Assn. of Theta XI v. University of Southern California* (2021) 62 Cal.App.5th 383, 416 ["even assuming [public university] abused its discretion in failing to adequately reveal the analytical significance it attached to those [factual] findings, [petitioner] was not prejudiced," citing Code Civ. Proc., § 1094.5, subd. (b)]; *Environmental Protection Information Center v. California Dept. of Forestry & Fire Protection* (2008) 44 Cal.4th 459, 516 [although agency's findings "leave something to be desired" under *Topanga* they do not constitute "prejudicial error"]; see also

25

Gov. Code, § 65010, subd. (b) [no rule of automatic prejudice for any procedural error in administrative proceedings including "any error, irregularity, informality, neglect, or omission (hereafter, error) as to any matter pertaining to . . . findings . . . , [or] appeals"]; cf. *Mira Development Corp. v. City of San Diego* (1988) 205 Cal.App.3d 1201, 1222-1223].)

More generally, "[t]here is generally no prejudicial abuse of discretion if substantial evidence supports [an agency's] decision and the decision is correct as a matter of law." (*Hernandez v. State Personnel Board* (2021) 60 Cal.App.5th 873, 877, citing *Topanga*, *supra*, 11 Cal. 3d at pp. 514-515; accord, *Lucas Valley Homeowners Assn. v. County of Marin* (1991) 233 Cal.App.3d 130, 147 ["Error occurring in an administrative proceeding will not vitiate the ruling unless it actually prejudices the petitioner"].)

The Schmids allege that the Board's failure to make adequate findings "has prejudiced plaintiffs, inter alia, by preventing plaintiffs and this reviewing court to understand the reasons for the decision." But their allegations of prejudice are inconsistent with matters judicially noticed. Here, as explained, records of the federal lawsuit show the federal courts conclusively adjudicated the correctness of the County's insistence on an inspection of the barn's interior. Even if there were some basis to argue the final federal court decision was incorrect, the Schmids opted for a federal forum and are now foreclosed from relitigating that question in state court. Accordingly, any failure by the Board of Building Appeals to provide findings and reasoning sufficient under *Topanga* for state courts to evaluate the correctness of the Board's decision is not prejudicial.

We do not understand the Schmids even to argue the failure to make adequate findings has prejudiced them in light of the federal court's conclusive decision, much less show that it has. Unlike in other situations in

26

which a remand for the agency to make adequate findings would not be an idle act, here it would be.  (See, e.g., *Respers v. University of Cal. Retirement System* (1985) 171 Cal.App.3d 864, 873 [where administrative record contains substantial evidence both in favor of and against the granting of relief, agency's failure to make adequate findings "is prejudicial and precludes meaningful judicial review[,] [n]or will we assume that a remand for findings is an idle act"].)

Indeed, the situation is analogous to the problems we sometimes encounter on appeal.  For example, a trial court's failure to render a statement of decision in a civil case is subject to harmless error review.  (*F.P. v. Monier* (2017) 3 Cal.5th 1099, 1108.)  And, as the Supreme Court has held, " '[i]f the omitted findings must have been adverse to the appellant, their omission is not error sufficient to authorize the reversal of the judgment.' " (*Id.* at pp. 1110-1111.)  Likewise, as we have explained more generally, when "a party has had a full and fair opportunity to present all of their evidence on a contested issue, and yet in the end there is simply no evidence that could support a favorable finding for them, then any legal error in the court's reasoning or basis for its decision quite obviously is harmless." (*In re J.R.* (2022) 82 Cal.App.5th 526, 533.)  Like these species of ordinary civil error, the failure to make adequate findings under *Topanga* cannot be deemed prejudicial where, as here, the correctness of the administrative agency's action has been conclusively adjudicated in a prior lawsuit, and hence on remand the administrative record could not possibly support a favorable finding for the petitioners.

The parties did not focus on this required element in the trial court. Nor has any party directly addressed it on appeal.  But as the parties seeking to overturn an administrative body's decision, the Schmids bore the burden of

establishing prejudice and so the issue is properly before us on appeal. (See *Rialto Citizens for Responsible Growth v. City of Rialto* (2012) 208 Cal.App.4th 899, 920-921 [failure to demonstrate prejudice from agency action held cognizable on appeal despite agency's sole focus in trial court on lack of error].)

### B.    Lack of Administrative Record

Next, the Schmids contend that because the trial court did not have a transcript of the administrative hearing, "it could not at the demurrer stage make any determination as to the correctness of the [Board of Building Appeals'] decision."

This argument is confusing, unclear and unpersuasive. They point to nothing in the record where they brought the lack of a hearing transcript to the trial court's attention (the issue is not mentioned in their opposition to the demurrer nor was it raised at the hearing). Further, the trial court did not make any determination about the correctness of the decision, nor was it asked to do so. At the demurrer stage, it considered solely whether the Schmids' *allegations* stated a facially viable cause of action. The Schmids cite no legal authority that a transcript of the administrative hearing was required for this purpose. Furthermore, in order to procure a transcript of the hearing it was their burden to request it from the agency and submit it to the trial court, but they have made no showing that they did so. (See Code Civ. Proc., § 1094.6, subd. (c) ["The complete record of the proceedings shall be prepared by the local agency or its commission, board, officer, or agent which made the decision and shall be delivered to the petitioner within 190 days after he has filed a written request therefor. . . . Such record shall include the transcript of the proceedings . . ."]; *Smith v. Regents of University of California* (1976) 58 Cal.App.3d 397, 405 [declining to consider petitioner's

challenge to sufficiency of the evidence because transcript of administrative hearing "is not a part of the record before this court on appeal, as it was not requested by either party"].)  "In any writ proceeding to review an administrative action, whether by way of administrative mandamus or traditional mandamus, the *petitioner* bears the responsibility for producing the administrative record."  (Asimow et al., Cal. Practice Guide: Administrative Law (The Rutter Group 2025) (Asimow et al.) ¶18:1.)  If a required component of the record was missing, the error, if any, was not the trial court's but their own.

## C.     Denial of a Fair Hearing

Next, the Schmids argue they stated a claim that they were denied a fair hearing in violation of California law because they were denied an opportunity to cross-examine some of the witnesses at the hearing. Specifically, they allege that the Board of Building Appeals did not allow them to "question [and/or] cross-examine" "Mr. Marquez and Permit Sonoma staff re its staff report and the basis for the inspection demand," or the reasons for Marquez's rejection letter, or to examine Marquez to impeach his credibility about what he claims to have seen, or about his lack of qualifications to make a judgment about what qualifies as an exempt building.

This issue is too undeveloped for us to consider it.

First, in the federal case, both the district court and the Ninth Circuit ruled that the restrictions on their opportunity for cross-examination did not meaningfully affect their ability to express their views and concerns, and thus they were not denied a fair hearing in violation of the federal due process clause.  The Ninth Circuit in particular ruled they "received ample

29

opportunity to present their [own] evidence," participate and be heard notwithstanding the limitation on their opportunity for cross-examination.

The Schmids argue that they are not collaterally estopped from challenging the fairness of the hearing under state law because California law affords greater rights to cross-examine witnesses than federal law. But they cite no authority addressing federal law on this issue much less engage in a comparative analysis of the applicable state and federal standards. And their citation to California law, such as it is, contains no legal analysis. "Mere suggestions of error without supporting argument or authority other than general abstract principles do not properly present grounds for appellate review." (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2002) 100 Cal.App.4th 1066, 1078.) When an appellant fails to "convince us, by developing his arguments, stating the law, and calling out relevant portions of the record, that the trial court committed reversible error," the argument is insufficient to show error. (See *Bishop v. The Bishop's School* (2022) 86 Cal.App.5th 893, 910.) That is true here. Their highly cursory treatment of this issue fails to meet their burden of demonstrating the court erred in ruling this aspect of their administrative mandamus claim is barred by collateral estoppel.

The same is true of their argument on the merits of this issue, which is a separate reason we affirm the court's demurrer ruling on this aspect of their claim. They cite a single California case involving quite different circumstances in which cross-examination was deemed "essential" on the facts of the case and its deprivation resulted in an unfairly one-sided presentation of evidence that deprived a party of a fair administrative hearing (see *Manufactured Home Communities, Inc. v. County of San Luis Obispo* (2008) 167 Cal.App.4th 705, 711-713). The Schmids assert on the

30

basis of that authority that they stated a claim that their administrative appeal hearing was unfair under California law. But the Schmids do not analyze that case much less apply it to the alleged facts of this one. Moreover, the County cites authority that the right to cross-examine witnesses is not mandatory or absolute in all administrative hearings. (See *James v. City of Coronado* (2003) 106 Cal.App.4th 905.) " ' "[D]ue process is a flexible concept, as the characteristic of elasticity is required . . . to tailor the process to the particular need. [Citations.] Thus, not every situation requires a formal hearing accompanied by the full rights of confrontation and cross-examination." ' " (*Id.* at p. 912; accord, *Doe v. Regents of University of California* (2016) 5 Cal.App.5th 1055, 1084 ["There is no requirement under California law that, in an administrative hearing, [a party] is entitled to cross-examine witnesses"].)

That view is supported by a leading treatise. It explains, "There are circumstances in which a private party's procedural due process rights, including the general right to a fair hearing, are properly protected despite the absence of oral testimony and cross-examination. In administrative proceedings, 'a formal hearing accompanied by the full rights of confrontation and cross-examination' is not necessarily required." (Asimow et al., *supra*, ¶ 3:330.) As reflected by extensive authorities cited in the treatise (as well as in the cases the parties cite), there is a wide body of law in this area. The Schmids acknowledge none of it. Their reply brief does not even address the County's argument or authorities on this point. Their argument rests on an over-simplified assumption that any curtailment of cross-examination, under any circumstances, in any administrative proceeding warrants mandamus relief under Code of Civil Procedure section 1094.5. That is not the law, and hence, even if they had shown they were free to re-litigate the hearing's

31

fairness, they have failed to persuade us they stated a viable claim that it was unfair.

## IV.

### *Injunctive and Declaratory Relief*

Finally, the Schmids argue they pled sufficient facts to state a claim for declaratory and injunctive relief, because they have sufficiently pled various underlying substantive violations under state and local law.  Having rejected the sufficiency of their allegations under substantive law, we affirm the court's demurrer ruling on this cause of action as well.

The Schmids also raise new issues in their reply brief:  that collateral estoppel does not apply because the trial court lacked a complete documentary record of the federal court proceedings; and that their statutory rights regarding inspection warrants were violated (see Code Civ. Proc., § 1822.50 et seq.) and that the issue was not litigated in the federal case.  We do not address these new issues because they have been forfeited.  (See *Herrera v. Doctors Medical Center of Modesto* (2021) 67 Cal.App.5th 538, 548 [" 'It is elementary that points raised for the first time in a reply brief are not considered by the court' "].)

## DISPOSITION

The judgment is affirmed.  Respondent shall recover its costs.

STEWART, P. J.

We concur.

RICHMAN, J.

MILLER, J.

*Schmid v. County of Sonoma* (A169274)